STATE OF NORTH CAROLINA v. RONNIE DEAN BARNES AND CHARLES LEE LEMONS

No. 540A90

(Filed 4 June 1993)

1. **Searches and Seizures § 21 (NCI3d)— affidavit for search warrant—failure to show deliberate falsehoods or reckless disregard for truth**

Defendants did not show that an affidavit filed to support the issuance of a search warrant contained deliberate falsehoods or exhibited a reckless disregard for the truth or that the affiant was not acting in good faith so as to require suppression of the evidence seized pursuant to the warrant where defendants contended that the officer who applied for the warrant alleged (1) that an informant told another officer that she had seen a small, black four-door subcompact when she told him she had seen a black Mustang, (2) that the informant gave the officer a description of two men in the vehicle which was "very favorable" to defendants when she actually told him the two men were clean shaven and defendants had facial hair, and (3) that the informant told him the two men had a plastic container in their possession when she actually said

that they were carrying a white gas can. A "small, black four-door subcompact" could be a description of a "black Ford Mustang," a plastic container could be a description of a "white gas can," and the officer could conclude that the description given by the informant was "very favorable" to defendants although she said they were clean shaven when they had facial hair. N.C.G.S. § 15A-978.

**Am Jur 2d, Searches and Seizures §§ 65, 79.**

**Propriety of considering hearsay or other incompetent evidence in establishing probable cause for issuance of search warrant. 10 ALR3d 359.**

2. **Arson and Other Burnings § 13 (NCI4th)— attempted first degree arson—occupancy of dwelling not required**

Indictments charged defendants with attempted first degree arson in violation of N.C.G.S. § 14-67 although they incorrectly recited that the charges were brought pursuant to N.C.G.S. § 14-58. Since it is unnecessary to prove that a dwelling house was occupied to support a conviction of attempted first degree arson under N.C.G.S. § 14-67, the evidence was sufficient to support defendants' conviction of attempted first degree arson even though it failed to show that a murder victim found in the dwelling was alive at the time of the attempted burning.

**Am Jur 2d, Arson and Related Offenses § 15.**

3. **Evidence and Witnesses § 1694 (NCI4th)— photographs of victim's body—relevancy to prove premeditation and deliberation**

A photograph showing the location of a murder victim's body when found and an autopsy photograph depicting a five-inch wound to the victim's neck were properly admitted in this first degree murder prosecution, notwithstanding defendant did not contest the identity or cause of death of the victim, since the photographs were relevant and material to prove premeditation and deliberation.

**Am Jur 2d, Homicide §§ 417 et seq.**

STATE v. BARNES

[333 N.C. 666 (1993)]

4. **Criminal Law § 105 (NCI4th)— discovery—unavailability of blood samples for testing by defendants—admissibility of grouping tests**

The results of blood grouping tests performed on samples taken from the interior of an automobile were not required to be excluded from evidence because all the blood taken from the automobile was consumed by the State's testing and none was left for testing by defendants since N.C.G.S. § 15A-903(e) only required the prosecution to furnish real evidence to the defense if it was available, none was available in this case, and there was no evidence of bad faith on the part of the State.

**Am Jur 2d, Depositions and Discovery § 449.**

5. **Evidence and Witnesses § 2209 (NCI4th)— blood grouping tests—reliability of procedures—waiver of right to voir dire**

Defendant waived any right he may have had to a *voir dire* hearing to establish the reliability of blood grouping procedures used by a forensic serologist where the serologist had been accepted by defendant as an expert and had already testified without objection about the experiments she had conducted to determine blood types when defendant objected to her testimony that the blood type of samples taken from a car were the same as decedent's blood type and asked for a *voir dire.*

**Am Jur 2d, Expert and Opinion Evidence § 300.**

6. **Evidence and Witnesses § 2209 (NCI4th)— blood grouping tests—effect of limited samples**

The inability of a serologist to perform additional testing due to the limited amounts of blood samples went to the weight and not the admissibility of her testimony as to the results of blood grouping tests.

**Am Jur 2d, Expert and Opinion Evidence § 300.**

7. **Criminal Law § 468 (NCI4th)— jury argument—blood testing— effect of limited samples—no impropriety**

The prosecutor's argument to the jury that the small amount of blood recovered from a car had nothing to do with the accuracy of the tests performed on the blood samples but only limited the number of tests that could be performed merely rebutted defendant's contention that the blood tests

were inaccurate due to the limited amount of blood and was not improper.

**Am Jur 2d, Trial §§ 307 et seq.**

8. **Arson and Other Burnings § 29 (NCI4th); Burglary and Unlawful Breakings § 59 (NCI4th); Homicide § 232 (NCI4th) — murder, burglary, and attempted arson — acting in concert — sufficient evidence of defendant's guilt**

The evidence was sufficient to support defendant's conviction of first degree murder, first degree burglary and attempted first degree arson under the theory of acting in concert where it tended to show that defendant was driving an automobile accompanied by the codefendant on the night in question; defendant and the codefendant bought gasoline and placed it in a container for which they paid a deposit; the container was not returned to the owner; a witness saw the automobile, which defendant was driving that night, parked in the neighborhood of the victims' house and saw defendant and the codefendant leave the automobile and walk toward that house; thirty minutes before this time, there was nothing awry at the house; one hour later the front and back doors of the house had been vandalized, a safe and seventeen guns had been removed from the house, the murder victim had been shot and stabbed while in the house, gasoline had been poured around the house, and an attempt had been made to start a fire; a gasoline container similar to the one defendant and the codefendant were carrying was found in the house; and blood of the same type as that of the victim was found in the automobile occupied by defendant and the codefendant on the night of the crimes.

**Am Jur 2d, Arson and Related Offenses § 55; Burglary §§ 44 et seq.; Homicide §§ 425 et seq.**

9. **Homicide § 552 (NCI4th) — first degree murder — second degree murder instruction not required**

The trial court in a first degree murder case did not err in refusing to instruct the jury on second degree murder as to defendant Lemons where the evidence tended to show that each of the defendants either did all the acts necessary to be guilty of first degree murder or acted in concert or as an aider and abettor in doing such acts, and defendant

Lemons relied on an alibi and did not otherwise contest the State's evidence.

**Am Jur 2d, Homicide § 526.**

10. **Indigent Persons § 27 (NCI4th) — denial of funds for private investigator — no error**

The trial court did not err in the denial of defendant's motion for funds to hire a private investigator in a first degree murder case where defendant alleged that the prosecutor furnished him with information that there were a number of suspects at the initial investigation of the case, and defendant introduced at the hearing a police report that an automobile which was not the vehicle defendant was driving was seen speeding away from the crime scene, since this evidence constituted only a mere hope or suspicion that favorable evidence was available.

**Am Jur 2d, Criminal Law §§ 733, 750.**

11. **Homicide § 489 (NCI4th) — premeditation and deliberation — lack of provocation — instruction supported by evidence**

There was sufficient evidence of lack of provocation in a first degree murder case to support the trial court's instruction that evidence of lack of provocation by the decedent could be considered in determining whether there was premeditation and deliberation by defendants where the jury could have found from the evidence that decedent was asleep in his bed when defendants broke into his home, and decedent was shot and stabbed by defendants as he came down the steps.

**Am Jur 2d, Homicide § 500.**

12. **Evidence and Witnesses § 3174 (NCI4th) — opinion as to consistency of statements**

The trial court did not err in allowing an officer to testify that statements made by a witness prior to trial were consistent with her trial testimony where the purpose of the officer's testimony was to show why the State had made a plea bargain with the witness and not to corroborate her testimony.

**Am Jur 2d, Witnesses §§ 641 et seq.**

**13. Evidence and Witnesses § 632 (NCI4th) — in-court identification — motion for voir dire too late**

The trial court did not err in the denial of defendant's motion for a *voir dire* hearing on a witness's in-court identification of defendant where the motion was made after the witness had already identified defendant before the jury.

**Am Jur 2d, Motions, Rules, and Orders §§ 22-26.**

**14. Evidence and Witnesses § 403 (NCI4th) — in-court identification — opportunity, attention and certainty**

A witness had the opportunity, attention and certainty required at the time of her initial viewing of defendants to support her in-court identification of one defendant where she testified that she was standing at the front fender of a car when defendants got out of the car; she noticed a white jug in one defendant's hand, and she conversed with defendants from only a few feet away; a street light was nearby and nothing blocked her view; and the witness did not hesitate in identifying defendants in the courtroom.

**Am Jur 2d, Evidence § 367.**

**15. Criminal Law § 1156 (NCI4th) — burglary — aggravating factor — armed with deadly weapon**

The trial court did not err in finding as an aggravating factor for first degree burglary that defendant was armed with a deadly weapon where there was evidence that defendant or a person with whom he was acting in concert used both a gun and a knife during the crime.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**16. Criminal Law § 1102 (NCI4th) — attempted arson — aggravating factor — commission to cover up murder — sufficiency of evidence**

The evidence was sufficient to support the trial court's finding as a nonstatutory aggravating factor for attempted arson that such crime was committed to cover up a murder where the evidence tended to show that a house was burglarized, an occupant of the house was shot and stabbed to death, and the house was ransacked; the den floor was saturated with gasoline and a struck match was found on the floor; a plastic container was found in the den; and defendants bought

gasoline and placed it in a similar plastic container shortly before the murder.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**17. Criminal Law § 1126 (NCI4th) — attempted arson — aggravating factor — commission to cover up burglary and murder — convictions of joined offenses not used**

The rule that a sentence for one offense may not be aggravated by defendant's acts which form the gravamen of contemporaneous convictions of joined offenses was not violated by the trial court's finding as an aggravating factor for attempted arson that such crime was committed to cover up a first degree burglary and a first degree murder for which defendants were also convicted since the aggravating factor was based upon the motivation for the attempted arson and not upon any element or aspect of the burglary or the murder.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Justice PARKER did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of life imprisonment entered by Rousseau, J., at the 26 February 1990 Criminal Session of Superior Court, Forsyth County, upon jury verdicts of guilty of first degree murder. The defendants' motions to bypass the Court of Appeals as to additional judgments were allowed 10 April 1991. Heard in the Supreme Court 9 December 1991.

The two defendants were tried for their lives for first degree murder. They were also tried for first degree burglary and attempted first degree arson.

The evidence in the light most favorable to the State showed that on 26 December 1988, Bobby Douglas Winn, Jr. was living with his father in Winston-Salem. The elder Winn owned and operated Bobby Sue's Lounge, and he was at the lounge at approximately 6:30 p.m. on that date. He saw his son and the defendant Barnes at the lounge. The younger Winn left the lounge between 8:30 and 9:00 p.m. to go to his father's home to go to bed. Approximately thirty minutes later the two defendants left the lounge together.

At approximately 10:00 p.m., Mr. Winn discovered two tires on his truck had been punctured. He sent James Overby to the Winn residence to get an air compressor to inflate the tires. When Mr. Overby arrived at the Winn residence, he saw the truck of the younger Winn parked in the driveway. He knocked on the door but received no answer. He then went to Mr. Winn's workshop, which was located on the premises, and retrieved the air compressor. Mr. Overby testified he did not notice anything wrong when he was at the Winn home.

As Mr. Winn and Mr. Overby were working on the car, they observed the two defendants in a black four door Plymouth Horizon with a confederate flag on the front. Lemons was driving. Mr. Winn then returned with Eddie Brewer to the Winn residence sometime between 10:30 and 11:00 p.m. to get two spare tires. Mr. Overby noticed the two defendants following Mr. Winn and Mr. Brewer in the Plymouth Horizon. Mr. Winn and Mr. Brewer saw nothing awry at the Winn residence at this time. Mr. Winn and Mr. Brewer returned to the lounge approximately thirty minutes after they had left it.

Kenneth Lee Willard testified he was working at the Parkway Texaco Station on 26 December 1988, and he sold gasoline to the defendant Barnes between 9:30 p.m. and 10:00 p.m. on that date. He lent the defendant Barnes a container for the gasoline and required him to make a deposit for the container. Barnes did not return the container to Mr. Willard for the refund of the deposit. Mr. Willard testified that the container was similar to State's exhibit #5.

Brenda Kay Baker testified that at approximately 11:00 p.m. on 26 December 1988, she was walking on Bryant Street close to the Winn residence when she saw a small black automobile with a confederate flag on the front. She saw the two defendants leave the vehicle and walk toward the Winn residence. One of them was carrying a container which was similar to State's exhibit #5.

At approximately 12:15 a.m. on 27 December 1988, the elder Winn and his wife left Bobby Sue's Lounge and went to their home, arriving at approximately 12:30 a.m. Mr. Winn noticed that the door to his workshop was open. He started to close it and discovered the lock and the door were damaged. He then discovered that his wife's automobile had been damaged. When he entered

the house, the odor of gasoline "about knocked him down." He found the body of his son lying face down. He had been shot once and had been stabbed twenty-three times.

Mr. Winn found a gasoline container in his den which was introduced into evidence as State's exhibit #5. The door to Mr. Winn's office and the front door had been badly damaged. His safe was found in the front yard. Seventeen guns had been taken from the house.

Each defendant was found guilty of the three crimes for which he was tried. The jury recommended that each defendant be sentenced to life in prison for the first degree murder convictions, which was done. Each defendant was sentenced to forty years in prison for first degree burglary and ten years for attempted first degree arson. All sentences are to be served consecutively.

*Lacy H. Thornburg, Attorney General, by G. Patrick Murphy, Assistant Attorney General, for the State.*

*David F. Tamer for defendant-appellant Ronnie Dean Barnes; Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant Charles Lee Lemons.*

WEBB, Justice.

Both defendants assign error to the admission into evidence of the results of a test conducted on blood samples taken from the automobile which was occupied by the defendants on the night of the murder. The officers searched the vehicle pursuant to a search warrant. Each of the defendants made motions to suppress the evidence gathered as a result of the search and a hearing was held on these motions prior to trial.

The evidence at the hearing on the motions to suppress showed that the 1987 Plymouth Horizon was purchased in April 1987. The title certificate showed Pamela Rene Alderson and Robert Moyer Wilkes were the owners. These two persons were living together at the time. In July 1988, Ms. Alderson and Mr. Wilkes stopped living together and Ms. Alderson kept the automobile, but Mr. Wilkes refused to endorse the title to her. Ms. Alderson and the defendant Lemons commenced living together. Ms. Alderson allowed Lemons to drive the automobile to his workplace and Mr. Lemons left the key in the vehicle in order for the defendant

**STATE v. BARNES**

[333 N.C. 666 (1993)]

Barnes to drive it when needed. The defendant Lemons kept tools in the backseat of the car.

In the application for the search warrant, a detective filed an affidavit in which, among other things, he said an informant had told another detective that she had seen a black four door subcompact vehicle parked approximately one block from the Winn residence. The detective also said in the affidavit that the informant had told the other detective she saw two men with a plastic container leave the vehicle. The detective said the description of the two men given him by the informant was "very favorable" to the defendants. The evidence at the hearing showed that the informant told the detective that she had seen a black Mustang. She also told him that two clean shaven white men left the car carrying a gas can. The defendants argue that this evidence showed that the detective changed the evidence in making the affidavit and if he had not done so, a search warrant would not have been issued.

At the end of the hearing, the court found facts consistent with the evidence as to the ownership and possession of the automobile. The court held that neither of the defendants had an expectation of privacy in the automobile and that they had no standing to contest the search.

The court found that if the defendants had standing to contest the search there was not a showing that the search warrant was falsely made by intentionally and knowingly misapplying the facts. The court overruled the defendants' motion to suppress the evidence.

[1] The first question raised by this assignment of error is whether the defendants have standing to contest the search of the vehicle. In order to have standing to contest a search, a defendant must have a legitimate expectation of privacy in the thing to be searched. *Rakas v. Illinois*, 439 U.S. 128, 58 L. Ed. 2d 387 (1978). It is hard to say the defendants had an expectation of privacy in the 1987 Plymouth Horizon. It was owned by the defendant Lemons' girlfriend and another man. Lemons' girlfriend allowed him to drive the automobile to work but the title was never in his name. The defendant Barnes had even less interest in the vehicle. He was allowed to drive it at times by Lemons. Nevertheless, we do not decide this question on this point. Assuming both defendants had a legitimate expectation of privacy in the automobile, we find no error in the issuance of the search warrant.

STATE v. BARNES

[333 N.C. 666 (1993)]

The defendants, relying on *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667 (1978), contend that it was error not to grant them a hearing on the validity of the search warrant after they had shown three different instances in which the officer who applied for the search warrant had falsified the affidavit. They say he said (1) the informant told another officer she had seen a black four door subcompact when she told him she had seen a black Mustang, (2) the informant gave the officer a description of the two men which was "very favorable" to the defendants when she actually told him the two men were clean shaven and the defendants had facial hair, and (3) the informant told him the two men had in their possession a plastic container when she had actually said they were carrying a gas can.

*Franks* holds that when a defendant makes allegations that an affidavit to support the issuance of a search warrant contains deliberate falsehood or reckless disregard for the truth and the affidavit would not be sufficient to support the issuance of a search warrant without the false or reckless statements, the defendant is entitled to a hearing on his allegations. If he is successful in proving the charges, the evidence seized pursuant to the search warrant must be suppressed. N.C.G.S. § 15A-978(a) provides for a hearing to test the good faith of an affiant in furnishing testimony for the issuance of a search warrant. *State v. Kramer*, 45 N.C. App. 291, 262 S.E.2d 693, *disc. rev. denied*, 300 N.C. 200, 269 S.E.2d 627 (1980).

We hold that the evidence at the hearing did not show that the allegations in the affidavit rose to the level of a deliberate falsehood or a reckless disregard of the truth. It also does not show the detective was not acting in good faith as defined in N.C.G.S. § 15A-978(a). A "small, black four-door subcompact vehicle" as described in the affidavit could be a description of a "black Ford Mustang" as described by the informant. A "plastic container" could be a description of a "white gas can." The detective could conclude that the description given by the informant of the men driving the vehicle was "very favorable" to the defendants although she said they were clean shaven when they had facial hair. We hold that the defendants have not shown that the affidavit filed to support the issuance of a search warrant contains deliberate falsehoods or shows a reckless disregard for the truth. This assignment of error is overruled.

The defendant Barnes assigned error to the taking of his blood pursuant to a search warrant, which warrant he says was not supported by probable cause. No reason or argument is made in support of this assignment of error and no authority is cited in its support. It is deemed abandoned. N.C. R. App. P. 28(b)(5). *State v. Brothers*, 33 N.C. App. 233, 234 S.E.2d 652, *disc. rev. denied*, 293 N.C. 160, 236 S.E.2d 704 (1977).

[2] Both defendants assign error to the failure of the court to dismiss the charge of attempted first degree arson for the insufficiency of the evidence to support a conviction. They say that an essential element of first degree arson is that the house be occupied at the time of the burning and there was no evidence that Bobby Douglas Winn, Jr. was alive at the time of the burning.

The common law definition of arson, which is in force in this State, is "the willful and malicious burning of the dwelling house of another person." *State v. Allen*, 322 N.C. 176, 196, 367 S.E.2d 626, 636 (1988). *See also State v. Pigott*, 331 N.C. 199, 415 S.E.2d 555 (1992). In order to give more protection when a dwelling house is occupied by a person at the time of the burning, the General Assembly adopted N.C.G.S. § 14-58 which provides:

> There shall be two degrees of arson as defined at the common law. If the dwelling burned was occupied at the time of the burning, the offense is arson in the first degree and is punishable as a Class C felony. If the dwelling burned was unoccupied at the time of the burning, the offense is arson in the second degree and is punishable as a Class D felony.

The indictments charged the defendants with violating N.C.G.S. § 14-58 by attempting to burn a dwelling house inhabited by Bobby Douglas Winn, Sr. and occupied by Bobby Douglas Winn, Jr. Although the indictments recited that the charges were brought pursuant to N.C.G.S. § 14-58, they actually charged a violation of N.C.G.S. § 14-67 which prohibits attempted arson. This mistake in the citation of the statute does not affect the validity of the trial. N.C.G.S. § 15A-924(a)(6) (1988). We held in *State v. Arnold*, 285 N.C. 751, 208 S.E.2d 646 (1974), that attempted arson under N.C.G.S. § 14-67 is a lesser included offense of first degree arson. It is not necessary to prove a dwelling house is occupied to support a conviction of attempted first degree arson under N.C.G.S. § 14-67. If the evidence does not show that the dwelling house was occupied at the time of the attempted burning it is not helpful to the defendants in

this case. If the defendants had been charged with first degree arson, they could have nevertheless been tried for attempted first degree arson because attempted first degree arson is a lesser included offense of first degree arson. N.C.G.S. § 15-170 (1983); *State v. Riera*, 276 N.C. 361, 172 S.E.2d 535 (1970).

We are aware that in *State v. Vickers*, 306 N.C. 90, 291 S.E.2d 599 (1983), we said it was not necessary to prove a dwelling house was occupied in order to convict a defendant of first degree arson. Insofar as *Vickers* is inconsistent with this case, it is no longer authoritative.

This assignment of error is overruled.

**[3]** Under his next assignment of error, the defendant Barnes contends it was error to admit into evidence two photographs of the victim. The defendant contends that since no dispute existed as to the identity of the victim or the cause of death, the photographs serve no relevant purpose other than to inflame the jury. We disagree and hold that the photographs were properly admitted.

As long as a photograph is relevant and material, the fact that it is gory or gruesome, or otherwise tends to arouse prejudice, will not alone render it inadmissible. *See* 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 34 (3d ed. 1988); *see also State v. Lowery*, 318 N.C. 54, 347 S.E.2d 729 (1986); *State v. Hannah*, 312 N.C. 286, 322 S.E.2d 148 (1984); *State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983). Of the two photographs admitted in this case, one was introduced to show the location of the victim's body when found, and the other photograph, apparently an autopsy photograph, depicted an approximately five inch wound to the victim's neck. Although the defendant did not contest the identity of the victim, nor the cause of death, these photographs were relevant for other purposes.

Generally, photographs taken during an autopsy are admissible. *State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66 (1990). Additionally, the defendant Barnes contested his guilt of first degree murder by premeditation and deliberation. Since premeditation and deliberation in most cases can only be proved by circumstantial evidence, *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80 (1975), premeditation and deliberation may be inferred from the nature and number of lethal blows after the deceased has been felled and rendered helpless, thus evidencing that the killing was done

STATE v. BARNES

[333 N.C. 666 (1993)]

in a brutal manner. *State v. Gladden*, 315 N.C. 398, 340 S.E.2d 673, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). In this case, the victim was stabbed twenty-three times. The location of his body at the bottom of the stairs suggests that the victim may have been surprised by his killer(s) as he was coming downstairs to investigate, thus negating any provocation on his part. Moreover, the photograph of the five inch cut to his neck demonstrates the brutality of the crime and tends to support premeditation and deliberation. The two photographs were relevant and material to prove premeditation and deliberation. This assignment of error is overruled.

[4]   The defendant Barnes next assigns error to the denial of his motion *in limine* to exclude from evidence the results of a blood grouping test performed on blood recovered from the interior of the 1987 Plymouth Horizon. The results of the test showed that the blood type of the samples taken from the automobile was similar to the blood type of the decedent. All the blood taken from the automobile was consumed in conducting the test by the State and there was none left to deliver to the defendants for testing.

The defendant Barnes contends that he was entitled to be furnished for testing a sample of the blood and for the failure to furnish such a sample, the State's evidence as to the results of the test should have been excluded from evidence. N.C.G.S. § 15A-903(e) provides in part:

In addition, upon motion of a defendant, the court must order the prosecutor to permit the defendant to inspect, examine, and test, subject to appropriate safeguards, any physical evidence, or a sample of it, available to the prosecutor if the State intends to offer the evidence, or tests or experiments made in connection with the evidence, as an exhibit or evidence in the case.

This statute requires that the prosecution furnish real evidence to the defendant if it is available. In this case there was none available. The defendant concedes there was no evidence of bad faith on the part of the State. This assignment of error is overruled.

[5]   The defendant Barnes next assigns error to the refusal of the court to hold a *voir dire* hearing to establish the reliability of the blood analysis conducted by Lucy Milkes, a forensic serologist. Ms. Milkes was called by the State as a witness and was accepted

by the defendant as an expert in forensic serology. She testified without objection as to the experiments she had conducted to determine blood types. As she was testifying that the blood type found in the automobile was the same as the blood type of the decedent, Barnes' counsel objected and asked for a *voir dire* to establish reliability. The court overruled this objection.

The defendant Barnes, relying on N.C.G.S. § 8C-1, Rule 103(c) and Rule 104(a), says it was the duty of the judge to determine the preliminary questions upon which admissibility depends and the failure of the court to allow him to question the witness outside of the presence of the jury effectively prevented him from challenging the reliability of this witness.

At the time this objection was made, the witness had been accepted by the defendant as an expert and testified without objection about the experiments she had conducted. The defendant waived any right he may have had to a *voir dire* before the witness testified. N.C.G.S. § 15A-1446(b) (1988). *State v. Blackwell*, 276 N.C. 714, 174 S.E.2d 534, *cert. denied*, 400 U.S. 946, 27 L. Ed. 2d 252 (1970). The defendant retained the right to cross-examine this witness. This assignment of error is overruled.

The defendant Barnes' next assignment of error is that the trial court erred in denying his motion to strike the testimony of serologist Lucy Milkes. The defendant based his motion on the lack of opportunity for independent analysis of the blood samples to which she testified, and the inability of the serologist to perform additional testing due to the limited sample.

The defendant's contention that the lack of a sample for independent testing required suppression of the evidence has already been addressed in this opinion. By this assignment of error, the defendant has not advanced any additional reasons why the trial court's ruling was in error.

[6] The defendant's second argument supporting his motion to strike the serologist's testimony is likewise without merit. The inability to perform additional testing on the blood samples goes to the weight of the evidence, not its admissibility. This Court has long recognized the admissibility of the results of blood group testing. *State v. Fulton*, 299 N.C. 491, 263 S.E.2d 608 (1980); *State v. Gray*, 292 N.C. 270, 233 S.E.2d 905 (1977). This assignment of error is overruled.

STATE v. BARNES

[333 N.C. 666 (1993)]

[7] The defendant Barnes' final assignment of error is that the trial court erred in overruling the objection of the defendant to improper argument made by the prosecution. During his closing argument, the Assistant District Attorney argued the following:

> Look at that blood evidence. Isn't it amazing that blood was found in that car? I mean, you know, doesn't that strike you as amazing, based on what they told you about Brenda Baker and that you can't believe a single thing she said? Doesn't the fact that blood was found in there lead [sic] credence to what she had to tell you? That the car that she described here had blood in it at all? That should convince you of her credibility?

> And they, you know, lawyers didn't like the number of tests that we did. You know, and what did Miss Milkes tell you? She said the number of tests don't affect the accuracy. Her results were accurate. It's just that the more tests you can do, the more of these percentages would be reduced.

> Well, you know, I guess—you know, and the quantity was only sufficient to do those tests. I guess what these lawyers are telling you is we need to have our murderers gut our victims more and get more blood.

The defendant contends that the prosecution's argument was beyond the scope of propriety and was calculated to inflame the jury. We disagree.

The control of the argument of the prosecutor and counsel is left to the discretion of the trial judge, and his rulings thereon will not be disturbed in the absence of abuse of discretion. *State v. Riddle*, 311 N.C. 734, 319 S.E.2d 250 (1984); *State v. White*, 307 N.C. 42, 296 S.E.2d 267 (1982). Wide latitude is allowed to counsel in their arguments to the jury. Here, the prosecutor was within the scope of proper argument. In context, the prosecutor merely rebutted the defendant's contention that the blood tests were inaccurate due to the limited amount of blood recovered from the car. The prosecutor argued to the jury that the small amount of blood had nothing to do with the accuracy of the tests performed, but merely limited the number of tests which could be performed. This assignment of error is overruled.

[8] The defendant Lemons assigns error to the overruling of his motion to dismiss all the charges against him. He does not argue

under this assignment of error that the evidence does not show the crimes were committed. He contends the evidence does not show he did them. We hold there was substantial evidence that the defendant committed the crimes.

The evidence showed that the defendant Lemons was driving an automobile accompanied by the defendant Barnes on the night in question. They bought gasoline and placed it in a container for which the defendants made a deposit. The defendants did not return the container to its owner. The container was similar to the container found in the Winn residence. A witness testified that at approximately 11:00 p.m. she saw the automobile, which the defendant Lemons was driving that night, parked in the neighborhood of the Winn residence. She saw the two defendants leave the automobile and walk toward the Winn residence carrying a container similar to the one found in the Winn residence. Approximately thirty minutes before the defendants were seen walking toward the Winn residence, there was nothing awry about the premises. Approximately one hour after the defendants were seen walking toward the residence, the front and back doors had been broken, the younger Winn's truck had been vandalized, the safe had been removed from the house, seventeen guns had been stolen, and the younger Winn had been killed. A gas container similar to the container the defendants were carrying was found in the house. Blood of the same type as the deceased's blood was found in the defendants' automobile.

The jury could find from this evidence that the defendants, acting in concert, broke into the house and committed the murder. Considering the evidence in the light most favorable to the State, as we are required to do when determining whether the motion to dismiss was correctly denied, *State v. Perry*, 316 N.C. 87, 340 S.E.2d 450 (1986), the jury could conclude that the two defendants were walking toward the Winn residence a short time before the murder occurred carrying a gas container that was found in the house approximately one hour later. It is a reasonable inference that they carried the container into the house. This assignment of error is overruled.

[9] The defendant Lemons next assigns error to the refusal of the court to charge on second degree murder. When a defendant is tried for first degree murder based on premeditation and deliberation and the evidence is sufficient to fully satisfy the State's burden

to prove all the elements of the offense and there is no evidence to negate these elements other than the denial by the defendant that he committed the offense, second degree murder should not be submitted to the jury. *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983), *overruled in part on other grounds, State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986).

In this case, there was evidence from the State to prove all the elements of first degree murder. The defendant relied on an alibi and did not otherwise contest the State's evidence. The defendant Lemons, relying on *State v. Thomas*, 325 N.C. 583, 386 S.E.2d 555 (1989) and *State v. Peacock*, 313 N.C. 554, 330 S.E.2d 190 (1985), contends the evidence against him was weak and ambiguous. The strength and ambiguity of the evidence were for the jury to determine. We have held it was sufficient for the jury to find all the elements of first degree murder. In *Thomas* and *Peacock*, the defendants introduced evidence which if believed would prove the defendants committed lesser offenses. That distinguishes them from this case.

The defendant Lemons, relying on *State v. Reese*, 319 N.C. 110, 353 S.E.2d 352 (1987), says the evidence does not show which of the two defendants did the shooting and stabbing and if the jury found Barnes had done these acts, there was no evidence that Lemons had the requisite *mens rea* of premeditation and deliberation to be guilty of first degree murder. In *Reese*, we held the evidence did not support a conviction of first degree murder based on premeditation and deliberation or any lesser included offense of that crime. We did not deal with the question of submitting second degree murder as a lesser included offense.

In this case, the jury could have found that each of the defendants either did all the acts necessary to be guilty of first degree murder or acted in concert or as an aider and abettor in doing such acts. If the jury did not so find as to either defendant, then the defendant should have been found not guilty. He should not have been found guilty of second degree murder. This assignment of error is overruled.

[10] The defendant Lemons next assigns error to the denial of his motion to provide funds for a private investigator. This motion was heard and denied before the trial. A private investigator should be provided for an indigent defendant only upon a showing that there is a reasonable likelihood that it will materially assist him

in the preparation of his defense or that without such help it is probable that he will not receive a fair trial. *State v. Holden,* 321 N.C. 125, 362 S.E.2d 513 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988); N.C.G.S. § 7A-450(b) (1989).

In his motion for the hiring of a private investigator, the defendant alleged that the district attorney furnished him with information that there appeared to be a number of suspects in the initial investigation of this case. At the hearing, the defendant Lemons introduced a police report that an automobile which was not the vehicle he was driving was seen "speeding away" from the crime scene. This evidence arises only to the level of mere hope or suspicion that favorable evidence is available. "[T]he State is not required by law to finance a fishing expedition for defendant in the vain hope that 'something' will turn up." *State v. Alford,* 298 N.C. 465, 259 S.E.2d 242 (1979). This assignment of error is overruled.

[11] The defendant Lemons next contends there was plain error in the charge to the jury because the court instructed the jury that evidence of lack of provocation by the decedent could be considered in determining whether there was premeditation and deliberation by the defendants. We hold there was sufficient evidence to support this charge. The jury could have found from the evidence that Bobby Douglas Winn, Jr. was at home asleep in his bed when the defendants broke into his home. As Mr. Winn came down the steps, he was shot and stabbed by the defendants. This was evidence from which the jury could have found lack of provocation by Mr. Winn. This assignment of error is overruled.

[12] The defendant Lemons' next assignment of error deals with the testimony of one of the officers. The officer was allowed to testify that he took a statement from Ms. Baker and it was substantially the same as her testimony. The defendant Lemons says that it was error not to require the witness to testify as to what Ms. Baker told him and let the jury determine how it compared with her testimony.

We believe the question raised by this assignment of error is governed by *State v. Jones,* 317 N.C. 487, 346 S.E.2d 657 (1986), which held that it was not error to allow an officer to testify that statements made by a witness prior to trial were consistent when the testimony was not elicited to corroborate the testimony of a witness, but to show why the State had made a plea bargain

STATE v. BARNES

[333 N.C. 666 (1993)]

with the witness. In this case, Ms. Baker was cross-examined in regard to a plea bargain she had made with the State. The officer was asked about what Ms. Baker had told him to show why the State had made a plea bargain with her. It was not introduced to corroborate her testimony. This assignment of error is overruled.

[13] The defendant Lemons next assigns as error the trial court's denial of his motion for a *voir dire* hearing on Brenda Baker's in-court identification of the defendant. The following interchange took place when Baker was asked to identify in court the two men she saw on the night of the murder:

Q: And do you see those two men in the courtroom here today, Miss Baker?

A: Right there. (Pointing toward the defendants.)

Q: Now, when you say right there, are you speaking of the two men seated behind these three lawyers right here?

A: Yes.

Q: Can you—for the record, can you describe—

MR. BEDSWORTH: Your Honor, I think at this time for us to object ask for a voir dire on her identification.

THE COURT: Overruled.

After Baker's testimony, the trial court explained that it denied the defendant's motion for a *voir dire* because it came after Baker's in-court identification. The defendant contends that the denial of his motion was prejudicial error because the trial court should hold a *voir dire* examination in accordance with *State v. Flowers*, 318 N.C. 208, 347 S.E.2d 773 (1986).

As discussed above, timely objection is required in order to preserve alleged errors for appellate review. The defendant Lemons' request for *voir dire* came after Baker had already identified him in front of the jury. It was not error for the court to deny the motion. *See State v. Roberts*, 293 N.C. 1, 235 S.E.2d 203 (1977); *State v. Blackwell*, 276 N.C. 714, 174 S.E.2d 534 (1970).

[14] The record reveals a sufficient basis for Baker's identification. Applying the factors in *State v. Flowers*, 318 N.C. 208, 347 S.E.2d 773, Baker had the opportunity, attention and certainty required at the time of the initial viewing of the subjects to support the

admittance of her in-court identification. For example, she testified that she was standing at the front fender of the car when both defendants got out of the car. She noticed a white jug in one of the defendant's hands, and she conversed with them from only a few feet away. A street light was nearby and nothing blocked her view. Baker did not hesitate in identifying the defendant in the courtroom. This assignment of error is overruled.

[15]  The defendant Lemons next assigns error to the court's finding as an aggravating factor to enhance the sentence on the burglary charge that he was armed with a deadly weapon. Guns and knives have been held to be deadly weapons. *State v. McKinnon*, 306 N.C. 288, 293 S.E.2d 118 (1982) (gun); *State v. Sturdivant*, 304 N.C. 293, 283 S.E.2d 719 (1981) (knife). There was evidence that the defendant or a person with whom he was acting in concert used both of them. This assignment of error is overruled.

The defendant Lemons' final assignment of error is that the trial court erred by aggravating his sentence for attempted arson by finding as a non-statutory aggravating factor that the attempted arson was committed to cover up the murder. The defendant contends first that the non-statutory aggravating factor was not supported by the evidence. Second, the defendant argues that because the murder, attempted arson and burglary offenses were joined for trial, it would violate double jeopardy to use the murder conviction to aggravate the arson charge. We disagree.

[16]  First, we hold that the evidence was sufficient to support the aggravating factor that the defendant committed the attempted arson in order to cover up the murder and burglary. The evidence showed that the two defendants were in possession of a plastic container similar to the one found in the den of the victim's residence shortly before the murder. The den floor was saturated with gasoline and a struck match was on the floor nearby. It is reasonable to infer that the house was first burglarized and ransacked while the victim suffered from the mortal wounds, then on their way out, the defendants threw a match towards the gasoline in order to destroy any evidence they may have left behind to link them to the crimes. This logical inference from the facts supports the aggravating factor.

[17]  The defendant contends, however, that even if the evidence supports the aggravating factor, enhancing his sentence based thereon violates protections against double jeopardy and the rules

set forth in *State v. Westmoreland*, 314 N.C. 442, 334 S.E.2d 223 (1985). Under *Westmoreland*, a conviction for which the defendant is being sentenced may not be aggravated by the defendant's acts which form the gravamen of contemporaneous convictions of joined offenses. *Westmoreland*, 314 N.C. at 449, 334 S.E.2d at 227; *see also State v. Lattimore*, 310 N.C. 295, 311 S.E.2d 876 (1984). Therefore, says the defendant Lemons, the attempted arson conviction may not be aggravated by acts forming the gravamen of the first degree murder or burglary convictions. Clearly, the rule in *Westmoreland* was not violated in this case for none of Lemons' acts forming the gravamen of the murder and burglary charges were used to aggravate his punishment on the attempted arson charge. The trial court merely reasoned that since the attempted arson was committed to assist the defendants in avoiding detection for the murder and burglary, the potential impact of the offense was more serious in this than other attempted arson cases where this factor did not motivate the criminal act. The gravamen, therefore, was the intent which motivated the criminal act, not some element or aspect of the criminal offense, the detection for which the defendant is attempting to avoid. This assignment of error is overruled.

For the reasons stated in this opinion, we find no error in either phase of the trial.

NO ERROR.

Justice Parker did not participate in the consideration or decision of this case.