STATE OF NORTH CAROLINA v. MARLTON LEE PRICE

No. 948SC485

(Filed 21 March 1995)

**11. Evidence and Witnesses § 2927 (NCI4th)— prior inconsistent statement—impeachment proper**

The State did not violate the rule that impeachment by a prior inconsistent statement may not be permitted where it is used as a mere subterfuge to get evidence before the jury which is otherwise inadmissible where it was not obvious that the prosecution called the witness in bad faith for an improper purpose; the State did not try to introduce any prior statement the witness may have given or call another witness to impeach the original witness; and the witness's testimony was not crucial to the State's case. N.C.G.S. § 8C-1, Rules 607 and 611.

**Am Jur 2d, Witnesses §§ 986 et seq.**

**Use or admissibility of prior inconsistent statements of witness as substantive evidence of facts to which they relate in criminal case—modern state cases. 30 ALR4th 414, supp sec. 1.**

**2. Evidence and Witnesses § 364 (NCI4th)— assault—defendant's conduct prior to assault—videotape—admissibility of evidence**

In a prosecution of defendant for assault with a deadly weapon with intent to kill inflicting serious injury and assault with a firearm on a governmental officer, the trial court did not err in allowing certain questions about defendant's conduct prior to a confrontation with two deputies and in admitting into evidence a videotape allegedly depicting this conduct, since the challenged evidence was part of the "chain of events" leading up to arrival of the deputies and was admissible to show defendant's state of mind immediately prior to the deputies being called to the scene.

**Am Jur 2d, Evidence §§ 340 et seq.**

**3. Assault and Battery § 101 (NCI4th)— assaults with firearm—self-defense—defendant's prior conduct—failure to give requested instruction—harmless error**

Any error by the trial court in failing to give defendant's requested instruction in a prosecution for assaults with a firearm

STATE v. PRICE

[118 N.C. App. 212 (1995)]

on two deputies that the jury should not consider defendant's conduct before the deputies arrived in determining whether defendant was the aggressor was harmless where the State's evidence of defendant's behavior immediately before the shooting allowed the jury to find that defendant was at fault and could not claim self-defense.

**Am Jur 2d, Trial §§ 1258 et seq.**

**4. Criminal Law § 1144 (NCI4th)— assault—aggravating factors—findings proper**

Where defendant was found guilty of assault with a deadly weapon with intent to kill inflicting serious injury and assault on a law enforcement officer with a firearm, and the court found as statutory aggravating factors that the offenses were committed to hinder the lawful exercise of a governmental function or enforcement of the laws and the offenses were committed against a law enforcement officer in the performance of his official duties, the evidence establishing the aggravating factors was not the same evidence necessary to prove an element of the offenses, and the two aggravating factors did not address the same conduct and therefore were not impermissibly duplicative.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**5. Criminal Law § 1430 (NCI4th)— assault—restitution to victim for costs of van and medical expenses**

The trial court in an aggravated assault prosecution did not err in recommending that defendant be required to pay restitution to the victim in the amount of $20,900 where the victim testified that, as a result of his injury and paralysis, he had to purchase a special van costing $19,900 and that he had incurred $1,000 in medical expenses which were not covered by workers' compensation.

**Am Jur 2d, Criminal Law §§ 588 et seq.**

Appeal by defendant from judgment entered 17 February 1993 by Judge W. Russell Duke, Jr. in Wayne County Superior Court. Heard in the Court of Appeals 31 January 1995.

*Attorney General Michael F. Easley, by Special Deputy Attorney General W. Dale Talbert, for the State.*

*Barnes, Braswell & Haithcock, P.A., by Glenn A. Barfield, for defendant-appellant.*

WALKER, Judge.

On 27 May 1992, Wayne County Deputy Sheriffs Robert Morrison and Thomas Effler responded to a complaint involving "a man out in the yard brandishing a gun at the neighbors." Effler arrived first and spoke for five to seven minutes with the complainants, who lived in several trailers located across a dirt path from the subject of the complaint, defendant Marlton Lee Price. After Morrison arrived, the complainants were attempting to show the deputies a videotape of defendant when one of the complainants indicated that defendant had exited his home and was approaching them with a holstered pistol on his side.

The evidence was conflicting as to the events that followed. The State's evidence showed that defendant exited his home with a holstered pistol on his side. As defendant approached, Morrison walked away from the complainants and toward defendant. Morrison asked if he could help defendant; both Morrison and Effler heard defendant say something about "son of a bitching blue lights," and Effler heard the words "shoot you." Immediately defendant grasped his holster with one hand and reached toward his pistol with his right hand. The deputies yelled at defendant telling him not to draw his pistol. Defendant then pulled his pistol, fired a shot at Morrison, and continued to fire at Morrison. The two deputies returned fire, and there was an exchange of gunfire between them and defendant. Morrison was hit by the second or third shot fired by defendant and was paralyzed from the waist down. After Morrison fell, defendant continued to fire in Effler's direction, while Effler was firing toward defendant and yelling at him to drop his pistol. Defendant was ultimately downed by Effler's gunfire and Effler was able to disarm him. Both deputies testified that while defendant was yelling at Effler and threatening to kill him, defendant appeared to be in control of his physical and mental faculties and did not appear to be impaired or under the influence of alcohol.

Defendant presented evidence that prior to the shootings, he was planning to go outside to feed his dogs. He put his .357 pistol in his holster because he did not want to be intimidated on his own property by his neighbors, who were wearing guns and pointing and laughing at him. After the deputy sheriffs arrived at the neighbors' home, defendant decided to go out in his own yard to explain to the deputies the facts regarding the neighbors' complaint. As he was walking toward the dirt path at the edge of his property, the deputies, who

were about fifteen feet apart, started walking toward him. Defendant continued to approach the deputies but did not put his hand on his holster. When Deputy Morrison reached the edge of the dirt path, he pulled his pistol and raised it to waist level but did not point it at defendant. He told defendant to drop his pistol and defendant stopped walking. Defendant put his hands out in front of him and asked the deputy to put his weapon away, while the deputy continued to tell defendant to drop his pistol. Defendant did not drop his pistol because he feared that if he reached for it in order to drop it, the deputies might take that movement as an action against them and open fire. Defendant told the deputy he just wanted to explain what was going on, at which point the deputy's weapon discharged, and the bullet struck defendant in his right thigh. Defendant feared that if he did not return fire, the deputies would kill him. He remembered reaching for his pistol with that thought in mind but did not remember drawing or firing the pistol.

At trial defendant was convicted of one count of assault with a deadly weapon with intent to kill inflicting serious injury on Morrison, one count of assault with a deadly weapon on Effler, and two counts of assault with a firearm on a governmental officer (Morrison and Effler). The trial court arrested judgment on the count of assault with a deadly weapon on Effler and one count of assault with a firearm on a governmental officer (Morrison), and defendant was sentenced on the other two counts to consecutive prison terms of twenty years and five years.

I

[1] Defendant brings forward ten assignments of error on appeal. He first assigns as error the trial court's overruling of his objections to certain questions asked by the State of its rebuttal witness Randy Grady.

The prosecutor asked Grady if defendant had cut him with a knife six or eight years ago. When Grady replied that he did not remember, the prosecutor attempted to impeach Grady by asking, "[D]id you not tell the . . . SBI agent that you and [defendant] were drinking? . . . That you got cut by [defendant] and never saw the knife." Grady responded that he did not recall telling that to the agent. Defendant's objections during this line of questioning were overruled. Defendant argues that the State called Grady, knowing that he would not cooperate, so that the prosecutor could then ask impeaching questions about the alleged

knifing incident and thereby introduce otherwise inadmissible evidence that defendant had a propensity for violence.

North Carolina Rule of Evidence 607 allows a party to impeach its own witness, and Rule 611 allows the use of leading questions on direct examination of a hostile witness. N.C. Gen. Stat. § 8C-1, Rules 607 & 611 (1994). Furthermore, the State may attempt to impeach a hostile witness by asking him whether he previously made certain prior inconsistent statements. N.C. Gen. Stat. § 8C-1, Rule 607 (1994); *State v. Hunt*, 324 N.C. 343, 348, 378 S.E.2d 754, 757 (1989). However, impeachment by a prior inconsistent statement may not be permitted where it is used as a mere subterfuge to get evidence before the jury which is otherwise inadmissible. *Hunt*, 324 N.C. at 349, 378 S.E.2d at 757 (citations omitted) (State improperly attempted to impeach its own witness by calling the detective to whom the witness had made a prior inconsistent statement and having him read the entire statement into the record).

We conclude that the State in the instant case did not violate the above evidentiary principles in its questioning of Grady. We do not agree with defendant that "it was obvious" the prosecution called Grady in bad faith or for an improper purpose. Even though the prosecutor was persistent in his questions, Grady did not remember whether he had previously been cut by defendant or what he may have told the SBI agent or the prosecutor's office. Furthermore, unlike *Hunt*, the State did not try to introduce any prior statement Grady may have given, nor was the SBI agent to whom Grady allegedly made the statement called to testify. Finally, we note that the testimony of Grady was not crucial to the State's case; therefore, its admission was not unduly prejudicial and the trial court did not err.

Defendant next assigns as error the trial court's denial of his motion for a mistrial based on the State's final question of Grady. The prosecutor asked Grady, "Marlton Price come to see you last night?" Before defendant could object, Grady answered, "No." The trial court overruled defendant's objection, but after a bench conference, sustained the objection to the question and instructed the jury to disregard the answer. Defendant moved for a mistrial based on the improper question, claiming the State lacked a good faith basis for the question and was attempting to inflame and prejudice the jury by suggesting that defendant had intimidated or corrupted Grady into giving false testimony. The court inquired whether defendant wanted further

limiting instructions and none were requested. The trial court denied defendant's motion.

A motion for a mistrial is addressed to the sound discretion of the trial judge and his ruling thereon is not reviewable without a showing of abuse of discretion. *State v. Boyd*, 321 N.C. 574, 579, 364 S.E.2d 118, 120 (1988). On these facts, the record does not disclose substantial or irreparable prejudice to defendant's case and the trial court correctly denied defendant's motion for a mistrial.

## II

[2] Defendant's next assignment of error is that the trial court erred by overruling his objections to certain questions about defendant's conduct prior to the confrontation with the deputies and by admitting into evidence a videotape allegedly depicting this conduct. During cross-examination of defendant, the prosecutor asked defendant, over his objection, whether on the day of the incident or at any time he had urinated while on his back porch. Defendant denied he had done so on the day in question but admitted he might have done so at some other time. Thereafter, the State offered evidence in rebuttal from Mike Williams and Terry Stallings that on the day of the shooting before the deputies arrived, defendant had walked around his back yard waving a pistol and had walked to the corner of his porch and urinated in front of the witnesses and several children. For illustrative purposes, the State was then allowed to introduce a videotape of defendant's conduct on the day of the shooting.

The testimony regarding defendant's conduct prior to the shooting was properly admitted. Although evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity therewith, such evidence may be admissible for other purposes. N.C. Gen. Stat. § 8C-1, Rule 404(b) (1994). In this case, the challenged evidence was part of the "chain of events" leading up to the arrival of the deputies and the ensuing confrontation, *see State v. Agee*, 326 N.C. 542, 547-48, 391 S.E.2d 171, 174 (1990) (citations omitted), and was admissible to show defendant's state of mind immediately prior to the deputies being called to the scene. The evidence was helpful to the jury in understanding the deputies' perception of the situation when they arrived and their response to defendant when he approached them with a loaded pistol on his side. We find that the probative value of this evidence outweighed any potential prejudicial effect; therefore, the trial court did not err by admitting the evidence. Because the witnesses' testimony

was properly admitted, the court properly admitted the videotape for the limited purpose of illustrating this testimony.

III

[3] At the charge conference, defendant requested an instruction that "a person has a Constitutional right to carry a firearm on his premises," which the court later gave. However, defendant claims the court erred by failing to give another of his requested instructions and by giving a special instruction requested by the State modifying the pattern jury instruction on self-defense to explain the term "aggressor." This instruction added the following language to the pattern jury instruction:

> This requirement [that defendant not be the aggressor] means that the defendant must be free from fault in bringing on, provoking, or engaging in the difficulty or confrontation before he can have the benefit of self-defense. Usually whether the defendant will be free from fault will be determined by his conduct at the time and place of the difficulty or confrontation. Yet the fault in bringing on the confrontation which will deprive him of the right of self-defense is not confined to the precise time of the encounter but may include fault so closely connected with the confrontation in time and circumstances as to be fairly regarded as operating to bring it about.

After the court charged the jury, it inquired whether there were any corrections or additions to the charge. Defendant then requested that the court give the following additional instruction:

> [A]ny activities of the *Defendant* which occurred *prior* to the arrival of the deputies could not be considered as bearing on "fault" as that term is used in the court's instruction on self-defense, including the special instruction adopted from the State's suggestion.
>
> And in addition, that merely exiting his home in order to speak to the deputies, without in any manner threatening the deputies, would not constitute "fault" nor be evidence that the defendant was the "aggressor" in the "difficulty or confrontation."

This request was denied. Defendant now contends that without his requested "clarifying" instruction, the State's instruction as given was error because the instruction allowed the prosecutor to argue to the jury in closing that the jury could consider defendant's behavior both

prior to the deputies' arrival and immediately before the shooting as "fault" or evidence that defendant was the aggressor, thereby nullifying his claim of self-defense.

The record does not include the prosecutor's closing argument nor any objections by defendant to the argument. Our resolution of defendant's contention is based on the evidence presented by the State, who had the burden of proving that defendant did not act in self-defense but was instead the aggressor and was "at fault" in bringing on the confrontation. The State's evidence showed that after the deputies arrived at the scene, defendant exited his home with a weapon on his side, approached the deputies directing loud, vulgar, and threatening words to them, reached toward his weapon, ignored repeated commands from the law enforcement officers to drop his weapon, and drew his weapon and discharged a shot in the direction of Deputy Morrison. This evidence of defendant's behavior immediately before the shooting, if believed, allowed the jury to properly find that defendant could not claim self-defense due to "fault so closely connected with the difficulty in time and circumstances as fairly operating to bring it about." Therefore, any purported error by the trial court in failing to instruct the jury not to consider defendant's conduct *before* the deputies arrived would be harmless error. Based on the foregoing, the trial court did not err in giving the State's requested instruction and in denying the additional instruction requested by defendant.

## IV

[4] Defendant next assigns as error the trial court's findings of aggravating factors for the two charges on which he was sentenced. Defendant was convicted of four charges, as follows: assault (on Deputy Morrison) with a deadly weapon with intent to kill inflicting serious injury (Count I); assault on a law enforcement officer (Deputy Morrison) with a firearm (Count II); assault (on Deputy Effler) with a deadly weapon (Count III); and assault on a law enforcement officer (Deputy Effler) with a firearm (Count IV). Judgment was arrested on the convictions for Counts II and III. In sentencing defendant on Count I, the court found as statutory aggravating factors that (1) the offense was committed to hinder the lawful exercise of a governmental function or enforcement of the laws, and (2) the offense was committed against a law enforcement officer in the performance of his official duties. The court also found one mitigating factor which was outweighed by the aggravating factors.

Defendant first claims it was error for the court to find the two aggravating factors for Count I because (1) the evidence establishing them was the same evidence necessary to prove an element of the conviction in Count II, and (2) the two aggravating factors addressed the same conduct and were impermissibly duplicative.

In support of his argument defendant first cites *State v. Barnes*, 333 N.C. 666, 687, 430 S.E.2d 223, 234 (1993) and *State v. Westmoreland*, 314 N.C. 442, 449, 334 S.E.2d 223, 228 (1985) for the proposition that "a conviction for which the defendant is being sentenced may not be aggravated by the defendant's acts which form the gravamen of contemporaneous convictions of joined offenses." However, unlike *Barnes* and *Westmoreland*, the court here arrested judgment in Counts II and III, and these convictions were not joined with Counts I and IV for sentencing purposes. Therefore, we are guided instead by N.C. Gen. Stat. § 15A-1340.4(a)(1) (1994) which states that in sentencing a defendant on a particular offense, "[e]vidence necessary to prove an element of the offense may not be used to prove any factor in aggravation . . . ." The phrase "the offense" refers to "the criminal charge of which defendant is convicted" and for which he is being sentenced. *State v. Melton*, 307 N.C. 370, 374, 298 S.E.2d 673, 676 (1983) (holding that "[a]s long as they are not elements essential to the establishment of the offense [of] which the defendant [is found] guilty, all circumstances which are transactionally related to the . . . offense and which are reasonably related to the purposes of sentencing must be considered during sentencing)." The aggravating factors found by the trial court in the instant case were not elements essential to the establishment of the offense of assault with a deadly weapon with intent to kill charged in Count I for which defendant was being sentenced.

In further support of his argument, defendant cites the portion of N.C. Gen. Stat. § 15A-1340.4(a)(1) providing that "the same item of evidence may not be used to prove more than one factor in aggravation." Here, the "same item of evidence" has not been used to prove both aggravating factors. Defendant disrupted the enforcement of laws by interfering with the deputies' investigation of the complaint against him. He accomplished this interference by assaulting the deputies. As this Court stated in *State v. Brown*, 67 N.C. App. 223, 237, 313 S.E.2d 183, 192 (1984), "[t]he defendant cannot be allowed to benefit by having only one aggravating factor charged against him instead of two simply because the method in which he chose to dis-

rupt the enforcement of the law included [assaulting] two members of this statutorily protected class."

Finally, defendant argues that the trial court erred in finding as an aggravating factor for the offense in Count IV that the assault with a firearm on Deputy Effler was committed to disrupt the lawful exercise of a governmental function or the enforcement of laws. Because a conviction for the offense in Count IV required proof only that Deputy Effler was performing his official duties at the time of the shooting and did not require proof that defendant's motive was to disrupt a governmental function or the enforcement of laws, defendant's argument fails.

We find no error in the sentencing phase of defendant's trial.

[5] Defendant's final argument is that the trial court erred in recommending that he be required to pay restitution in the amount of $20,900 to Deputy Morrison. Defendant claims there was insufficient evidence to support such a recommendation. We disagree. Deputy Morrison testified that, as a result of his injury and paralysis, he had to purchase a special van costing $19,900 and that he had incurred $1,000 in medical expenses which were not covered by workers' compensation. Since there was competent evidence before the court to support restitution of $20,900, the trial court's recommendation was not error.

No error.

Judges EAGLES and McGEE concur.