STATE OF NORTH CAROLINA v. WAYNE SCOTT

No. COA01-96

(Filed 4 June 2002)

### 1. Jury— selection—private unrecorded bench discussions

Defendant's nonwaivable constitutional right to be present at every stage of his capital trial was violated by the trial judge's unrecorded private bench discussions with prospective jurors during jury selection on their requests to defer their jury service, and defendant's right under N.C.G.S. § 15A-1241 to have complete recordation of jury selection in capital cases was also violated by these unrecorded discussions. However, these errors were harmless beyond a reasonable doubt where the record does not reveal that any prospective juror was deferred as a result of a private discussion with the judge, and the record shows that the judge resumed the jury voir dire after each of the private discussions with prospective jurors. N.C. Const. art. I, § 23.

### 2. Criminal Law— motion for mistrial—Post Office's failure to deliver juror summonses to rural box number addresses

The trial court did not abuse its discretion in a first-degree murder, first-degree burglary, first-degree rape, and arson case by denying defendant's motion for a mistrial based on an alleged refusal of the United States Postal Service to deliver juror summonses to Robeson County residents with rural box number addresses, because: (1) defendant has failed to show that the trial court's denial was so arbitrary that it could not have been the result of a reasoned decision since the change in the mail delivery policy complained of by defendant did not affect the venire from which defendant's jury was drawn; and (2) the change in mail delivery policy complained of by defendant began the day before the start of jury selection in defendant's case, and N.C.G.S. § 9-10 requires a person to be served at least 15 days before the session of court for which the juror is summoned.

### 3. Arson— error to find first-degree when elements of second-degree charged

The trial court erred by entering judgment against defendant for first-degree arson and on remand the trial court is instructed to enter judgment against defendant for second-degree arson and to sentence defendant accordingly, because: (1) the indictment was not sufficient to put defendant on notice that he may be tried

STATE v. SCOTT

[150 N.C. App. 442 (2002)]

for first-degree arson and did not allow defendant to prepare accordingly; (2) although the indictment charged defendant with violating N.C.G.S. § 14-58 by burning the dwelling house inhabited by the two victims, the indictment did not allege that the house was in fact occupied at the time of the burning; and (3) the trial court lacks subject matter jurisdiction to try or enter judgment on an offense based on an indictment that only charges a lesser-included offense.

**4. Burglary and Unlawful Breaking or Entering— first-degree—variance between indictment and instructions— no effect on felony murder convictions—harmless error**

Any error by the trial court's instruction on first-degree burglary allowing defendant to be convicted if the evidence proved he intended to commit murder or rape when he broke into the victims' home when the indictment alleged only the intent to commit murder was harmless because (1) the trial court properly arrested judgment on the first-degree burglary conviction since burglary was the underlying felony for two convictions of defendant for felony murder, and (2) any variance between the burglary indictment and the trial court's instructions had no effect on defendant's felony murder convictions since the State was not required to secure a separate indictment for the underlying felony in a felony murder prosecution, and the short-form indictment was sufficient to charge felony murder.

Appeal by defendant from judgments entered 1 February 1999 by Judge James R. Vosburgh in Robeson County Superior Court. Heard in the Court of Appeals 4 December 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for defendant-appellant.*

CAMPBELL, Judge.

On 4 December 1995, defendant Wayne Scott was indicted for the murders of Docia Chavis and Melinda Chavis, arson, first-degree burglary, and first-degree rape. The case was tried capitally on the basis of both premeditated and deliberate murder and felony murder. On 27 January 1999, defendant was found guilty of first-degree arson, first-degree rape, first-degree burglary, and two counts of first-degree mur-

der under the felony murder rule. Following a capital sentencing proceeding, the jury was unable to reach a unanimous sentencing recommendation on the two first-degree felony murder convictions. Accordingly, the trial court sentenced defendant to two consecutive terms of life imprisonment. Defendant also received consecutive sentences of 101 to 132 months for the first-degree arson conviction, and 384 to 470 months for the first-degree rape conviction. The trial court arrested judgment on the first-degree burglary conviction because burglary was the underlying felony supporting the two first-degree felony murder convictions.[1]

The State's evidence tended to show that defendant attended a party at the home of Leo Edwards on the evening of 3 July 1995. While at the party, defendant smoked crack cocaine and drank liquor. Defendant left the party between midnight and 1:00 a.m. on 4 July 1999, and went to the home of eighty-three-year-old Docia Chavis and her seventeen-year-old granddaughter, Melinda Chavis. Defendant entered the Chavis home through an unlocked door, strangled Docia Chavis, strangled and raped Melinda Chavis, and, after both victims were dead, set fire to the house.

Additional facts will be presented as needed to discuss specific issues raised by defendant.

### Jury Selection Issues

**[1]** In his first argument defendant contends that the trial court committed reversible error under the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution by having unrecorded private bench discussions with prospective jurors. Defendant argues that these private bench discussions violated his nonwaivable right to be present at every stage of his capital trial.

A review of the jury selection process reveals the following: After defendant's case was called for trial on 4 January 1999, the first set of prospective jurors entered the courtroom. After this group of prospective jurors was told that defendant's case had been called for trial, the following exchange transpired:

---

1. When a defendant is convicted of first-degree murder pursuant to the felony murder rule, and a verdict of guilty is also returned on the underlying felony, this latter conviction merges into the murder conviction, and any judgment imposed on the underlying felony must be arrested. *State v. Moore*, 339 N.C. 456, 468, 451 S.E.2d 232, 238 (1994).

BY THE COURT:

. . . It is my understanding that no jury excuses have been heard from this group of jurors today. Is that correct?

(PROSPECTIVE MEMBERS OF THE JURY NOD IN THE AFFIRMATIVE)

BY THE COURT:

Are those—are there any of you who have not had an opportunity to speak to a District Court judge with regard to serving as a juror this week? And I will tell you that this could be a protracted trial and extend for anywhere from three weeks to as much as five weeks. And I tell you that because it could have some effect on your lives with regard to business commitments and things of that nature. I cannot excuse you from jury duty, but I can have you deferred so that you can serve some other time. Are there any of you among the jurors who are out there now who would like to speak to me privately at the bench with regard to having your jury service deferred to some subsequent time? If there are, let me ask you to raise your hands. I see three hands, four, five. All right. Sheriff, if you would, stand there and have them line up right there at the bench. And I'll speak to you privately up here at the bench.

(BENCH CONFERENCES WITH INDIVIDUAL PROSPECTIVE MEMBERS OF THE JURY OFF THE RECORD)

BY THE COURT:

Are there any others who would like to meet with me with regard to the possibility of deferring your jury service?

Defendant and defense counsel were present in the courtroom throughout this exchange, but were not present at the bench when the private discussions with prospective jurors took place, nor were the discussions recorded by the court reporter. After this exchange, the judge proceeded with jury *voir dire*. The record does not indicate that any action was taken by the judge as a result of these unrecorded private discussions with prospective jurors.

The record further reveals three additional occasions on which the judge had unrecorded private discussions with prospective jurors. On each occasion, after the prospective jury panel entered the courtroom, the judge asked if any member of the panel wished to be

heard concerning a request that their jury service be deferred. On two of these occasions, the judge informed the prospective jurors that the trial could take several weeks and could create personal hardships which might make it impossible for some of the jurors to serve. On one occasion, the judge simply asked if any of the prospective jurors wished to be heard concerning deferral of their jury service. The judge then questioned the prospective jurors individually at the bench about their requests to be deferred. It is uncontradicted that these private bench discussions with prospective jurors occurred outside the hearing of defendant and his attorneys. However, as with the first round of private bench discussions with prospective jurors, the record does not disclose that any prospective juror was actually excused or deferred as a result of these private communications. In fact, defendant has failed to identify any prospective juror that was actually excused or deferred as a result of the trial court's unrecorded private discussions with prospective jurors.

The Confrontation Clause of the North Carolina Constitution guarantees the right of every accused to be present at every stage of his trial. N.C. Const. art. I, § 23; *State v. Cummings*, 353 N.C. 281, 289, 543 S.E.2d 849, 854, *cert. denied*, —— U.S. ——, 151 L. Ed. 2d 286 (2001); *State v. Nobles*, 350 N.C. 483, 491, 515 S.E.2d 885, 891 (1999). In *Cummings*, our Supreme Court recently stated:

> In a capital case, there is a heightened need for strict adherence to the constitutional mandate that the defendant be personally present at all critical stages of the prosecution. This right, as it pertains to communications of substance between the trial court and a prospective juror, is based on the principle that a defendant should be permitted an opportunity to evaluate and be heard as to whether the proposed judicial action is appropriate under the circumstances.

*Id.* at 289, 543 S.E.2d at 854. "Furthermore, defendant's right to be present at every stage of his capital trial is nonwaivable." *Nobles*, 350 N.C. at 491, 515 S.E.2d at 891.

It is well settled that jury selection is a stage of a capital trial at which the defendant has the constitutional right to be present, and that it is error for the trial court to exclude the defendant, counsel, and the court reporter from its private communications with prospective jurors prior to excusing them. *Cummings*, 353 N.C. at 289, 543 S.E.2d at 854; *State v. Williams*, 339 N.C. 1, 28-29, 452

S.E.2d 245, 262 (1994); *State v. Smith*, 326 N.C. 792, 794, 392 S.E.2d 362, 363 (1990).

The defendant bears the burden of demonstrating this kind of error from the record on appeal. *Nobles*, 350 N.C. at 494, 515 S.E.2d at 892. However, this kind of error "is subject to harmless error analysis, the burden being upon the State to demonstrate the harmlessness beyond a reasonable doubt." *Williams*, 339 N.C. at 29, 452 S.E.2d at 262. Our Supreme Court has found such error harmless beyond a reasonable doubt where " 'the transcript reveals the substance of the conversations, or the substance is adequately reconstructed by the trial judge at trial,' " *State v. Adams*, 335 N.C. 401, 409, 439 S.E.2d 760, 763 (1994) (quoting *State v. Boyd*, 332 N.C. 101, 106, 418 S.E.2d 471, 474 (1992)), and "it is manifest from the transcript that defendant was not harmed because his presence would have made no difference in the outcome of the conversation . . . ." *Williams*, 339 N.C. at 29, 452 S.E.2d at 262. Further, in *State v. Payne*, 328 N.C. 377, 402 S.E.2d 582 (1991), the Supreme Court stated:

> Whether this kind of error is harmless depends, we conclude, on whether the questioning of prospective jurors in defendant's absence might have resulted in a jury composed differently from one which defendant might have obtained had he been present and participated in the process. We are satisfied here beyond a reasonable doubt that defendant's absence during the preliminary questioning of prospective jurors did not result in the rejection of any juror whom defendant was entitled to have on the panel or the seating of any juror whom defendant was entitled to reject either for cause or peremptorily.

*Id.* at 389, 402 S.E.2d at 589; *accord Cummings*, 353 N.C. at 289-90, 543 S.E.2d at 854.

In the instant case, we conclude that the trial court violated defendant's constitutional right to be present by having unrecorded private discussions with prospective jurors on each of the four occasions recited above. The question is whether the State has demonstrated the error to be harmless beyond a reasonable doubt.

We conclude that it has under the reasoning of the Supreme Court in *Williams*. In *Williams*, the defendant assigned error to seven alleged unrecorded private bench conferences, each with a different prospective juror. One of the alleged private bench conferences was referenced in the trial transcript only by the following:

"DISCUSSION AT THE BENCH with a juror." This incident occurred immediately after court opened on the ninth day of jury selection. The record did not reveal that any action was taken as a result of this communication, and, immediately after it occurred, the trial court greeted those in attendance and resumed the *voir dire* examination of the prospective jurors. Based on these facts, the Court held:

> We can safely assume that this juror was thereafter subject to questioning by both the State and defendant, and was either seated or excused on the basis of this examination and not the discussion at the bench. The discussion, therefore, did not deprive defendant of a juror to whom he would otherwise have been entitled, nor did it result in the seating of a juror whom he might otherwise have rejected. It was, therefore, harmless under the rationale of *State v. Payne*, 328 N.C. 377, 402 S.E.2d 582.

*Williams*, 339 N.C. at 31, 452 S.E.2d at 263.

In defendant's case, the record references all four occasions of private discussions between the judge and prospective jurors as follows: "(BENCH CONFERENCES WITH INDIVIDUAL PROSPECTIVE MEMBERS OF THE JURY OFF THE RECORD)." The record further reveals that each discussion was preceded by the judge asking the prospective jurors if any of them wished to be heard concerning possible deferral of their jury service. The record does not reveal that any action was taken as a result of any of the private discussions. There is no showing that a prospective juror was deferred as a result of a private discussion with the judge. Finally, after each of the private discussions between the judge and prospective jurors, the record shows that the judge resumed the jury *voir dire*. We find these facts sufficiently similar to those in *Williams* to make the Supreme Court's reasoning in *Williams* controlling. Therefore, we conclude that the State has met its burden of establishing that the trial court's violation of defendant's right to be present was harmless beyond a reasonable doubt.

Defendant further points out that N.C. Gen. Stat. § 15A-1241 requires complete recordation of jury selection in capital proceedings, and that the trial court granted defendant's motion for complete recordation prior to trial. Thus, the trial court also erred under N.C.G.S. § 15A-1241 in failing to record its private discussions with prospective jurors. However, we conclude that this error was likewise harmless beyond a reasonable doubt for the reasons stated above. Accordingly, defendant's first assignment of error is overruled.

**STATE v. SCOTT**

[150 N.C. App. 442 (2002)]

Defendant next contends that the trial court erred in denying his motion for a mistrial on the grounds that the refusal of the United States Postal Service to deliver juror summonses to Robeson County residents with rural box number addresses (1) deprived defendant of a jury of his peers chosen from a fair cross-section of the community in violation of the Sixth Amendment to the United States Constitution and (2) violated the requirements of N.C. Gen. Stat. § 9-10.

**[2]** The record reveals that on 4 January 1999, the first day of jury selection, the trial court observed that many fewer prospective jurors than expected had appeared for jury service. On 11 January 1999, the trial court again expressed concern over the failure of a number of prospective jurors to appear for jury duty. Finally, on 13 January 1999, defense counsel and the trial court had the following exchange:

BY MR. JACOBSON:

We have had problems with jurors from the very beginning. And I think I have figured out what is going on. And that's going to be part of a motion. The post office has recently said that they will not deliver mail to—pieces of mail that are addressed to a rural route.

BY THE COURT:

Or a rural box number.

BY MR. JACOBSON:

Or a rural box.

BY THE COURT:

They've done that since last Sunday.

BY MR. JACOBSON:

Yes, they have. And that includes jury summonses because they go out of this county by mail. And that accounts for at least why we didn't have any responses on this panel that came in Monday. And so it's my opinion that the defendant is being denied a jury of his peers since it's only town folks that are being called as jurors and not people from the rural routes. In order to preserve it, Your Honor, I make a motion for a mistrial on that basis.

The trial court denied defendant's motion for a mistrial, and defendant assigns error to this denial.

The standard of review for the denial of a motion for a mistrial has been stated by the Supreme Court as follows:

> It is well settled that the decision of whether to grant a mistrial rests in the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of an abuse of discretion. . . . [A] trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.

*State v. Barts*, 316 N.C. 666, 682, 343 S.E.2d 828, 839 (1986) (citations omitted).

In the instant case, defendant has failed to show that the trial court's denial of his motion for a mistrial was so arbitrary that it could not have been the result of a reasoned decision since the change in the mail delivery policy complained of by defendant did not affect the *venire* from which defendant's jury was drawn.

N.C.G.S. § 9-10 (1999) requires that summonses to jurors "shall be served personally, or by leaving a copy thereof at the place of residence of the juror, or by telephone or first-class mail, at least 15 days before the session of court for which the juror is summoned." N.C.G.S. § 9-10 further provides that service by first-class mail is valid and binding on the person served "if mailed to the correct current address of the juror." N.C.G.S. § 9-10(a).

Here, defendant's case was called for trial at the 4 January 1999 Session of Robeson County Superior Court. The jury selection process continued into the 11 January 1999 Session of Robeson County Superior Court. Under N.C.G.S. § 9-10(a), the juror summonses for the 4 January 1999 session of court were required to be served no later than 20 December 1998, while the juror summonses for the 11 January 1999 session were required to be served no later than 27 December 1998. The record shows that the change in mail delivery policy complained of by defendant began on 3 January 1999, the day before the start of jury selection in defendant's case. In addition, defendant asserts in his brief that the addresses on the juror summonses for defendant's jury *venire* became incorrect the day before jury selection began. Based on these facts, we find that the change in mail delivery policy complained of by defendant could not have adversely affected defendant's jury *venire* since the prospective jurors for defendant's case were required to be summoned at least seven days prior to institution of the new policy. Defendant has failed

to show, and the record does not otherwise indicate, that defendant's jury *venire* was in any way affected by the Postal Service's change in mail delivery policy in Robeson County. Thus, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

## Guilt-Innocence Issues

**[3]** Defendant next contends that the trial court erred in entering judgment against him for first-degree arson because the arson indictment only alleged the elements of second-degree arson.

The indictment under which defendant was charged with arson provided:

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did maliciously burn the dwelling house *inhabited* by Docia Chavis and Melinda Chavis, located at Route 3 Box 62, Lumberton, North Carolina, all against the form of the statute in such case made and provided and against the peace and dignity of the State.

(Emphasis added). The caption of the indictment does not identify the alleged offense by name, but merely states that the alleged offense is a violation of N.C. Gen. Stat. § 14-58. The record shows that both the arrest warrant and the certificate of arraignment identify the alleged offense as second-degree arson. In addition, the record indicates that when defendant's case was called for trial the prosecutor identified the charge as second-degree arson.

During the jury charge conference, the trial court indicated that it planned to instruct the jury on first-degree arson. Defense counsel objected, arguing, *inter alia*, that the indictment only charged defendant with second-degree arson. The trial court overruled defendant's objection and instructed the jury on first-degree arson, and the lesser-included offenses of second-degree arson and burning an uninhabited house. After the trial court instructed the jury, defendant renewed all of his earlier objections to the instructions. The jury subsequently found defendant guilty of first-degree arson. Defendant now argues that he could not be found guilty of first-degree arson since the indictment only alleged second-degree arson.

N.C. Gen. Stat. § 15A-924(a)(5) (1999) provides that an indictment or other criminal pleading must contain:

A plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.

A bill of indictment is sufficient to charge a particular criminal offense when:

"(1) The offense is charged in a plain, intelligible, and explicit manner; (2) The offense is charged properly so as to avoid the possibility of double jeopardy; and (3) There is such certainty in the statement of the accusation as to enable the accused to prepare for trial and to enable the court, on conviction or plea of *nolo contendre* [sic] or guilty to pronounce sentence according to the rights of the case."

*State v. Jones*, 110 N.C. App. 289, 291, 429 S.E.2d 410, 411-12 (1993) (quoting *State v. Reavis*, 19 N.C. App. 497, 498, 199 S.E.2d 139, 140 (1973)). We conclude that the arson indictment in the instant case was not sufficient to put defendant on notice that he may be tried for first-degree arson and to allow him to prepare accordingly.

The common law definition of arson is still in force in North Carolina, *State v. Barnes*, 333 N.C. 666, 677, 430 S.E.2d 223, 229 (1993), and has been stated as "the willful and malicious burning of the dwelling house of another person." *State v. Allen*, 322 N.C. 176, 196, 367 S.E.2d 626, 637 (1988). "Further, since arson is an offense against the security of the habitation and not the property, an essential element of the crime is that the property be inhabited by some person." *State v. Vickers*, 306 N.C. 90, 100, 291 S.E.2d 599, 606 (1982). Thus, the Supreme Court has held "that 'dwelling house' as contemplated in the definition of arson means an *inhabited* house." *Id.* (emphasis in original). Further, in *Vickers*, the Supreme Court expressly rejected the "defendant's attempt to equate *inhabit* with *occupy*." *Id.* (emphasis in original). Accordingly, "common law arson results from the burning of a dwelling even though its occupants are temporarily absent at the time of the burning." *Id.*

In 1979, "[i]n order to give more protection when a dwelling house is occupied by a person at the time of the burning," *Barnes*, 333 N.C. at 677, 430 S.E.2d at 229 (1993), the General Assembly amended N.C.G.S. § 14-58 to create two degrees of arson:

There shall be two degrees of arson as defined at the common law. If the dwelling burned was *occupied* at the time of the burning, the offense is arson in the first degree and is punishable as a Class D felony. If the dwelling burned was *unoccupied* at the time of the burning, the offense is arson in the second degree and is punishable as a Class G felony.

N.C.G.S. § 14-58 (1999) (emphasis added).

Combining the common law definition of arson with the provisions of N.C.G.S. § 14-58, we find the elements of first-degree arson to be: (1) the willful and malicious burning (2) of the dwelling (i.e., inhabited) house of another; (3) which is occupied at the time of the burning. The elements of second-degree arson are: (1) the willful and malicious burning (2) of the dwelling (i.e., inhabited) house of another; (3) which is unoccupied at the time of the burning. *Jones*, 110 N.C. App. at 291, 429 S.E.2d at 412.

The indictment in the instant case charged defendant with violating N.C.G.S. § 14-58 by burning the dwelling house *inhabited* by Docia Chavis and Melinda Chavis. The indictment did not allege that the house was in fact *occupied* at the time of the burning. "All the facts and circumstances which constitute the statutory definition of the offense, or which are distinctive of the particular degree for which punishment is to be inflicted, must be alleged in the indictment or information." 5 Am. Jur. 2d *Arson and Related Offenses* § 32, at 802 (1995). Accordingly, we conclude that the indictment in the instant case did not allege every element of first-degree arson and was not sufficient to put defendant on notice that he may be tried for first-degree arson. Thus, it was error for the trial court to enter judgment against defendant for first-degree arson based on the indictment in the instant case.

The State argues that this error is harmless beyond a reasonable doubt because the transcript indicates that defendant was on notice that the State intended to attempt to convict him of first-degree arson, and, in fact, presented a full defense to the charge of first-degree arson. Thus, the State contends that any variance between the indictment and the jury instructions and judgment was not fatal and did not in any way prejudice defendant.

However, the State's argument ignores the fact that the trial court lacks subject matter jurisdiction to try, or enter judgment on, an offense based on an indictment that only charges a lesser-included

offense. While it is permissible to convict a defendant of a lesser degree of the crime charged in the indictment, *see* N.C. Gen. Stat. § 15-170 (1999), "[a]n indictment will not support a conviction for an offense more serious than that charged." *State v. Hare*, 243 N.C. 262, 264, 90 S.E.2d 550, 552 (1955) (quoting 42 C.J.S. *Indictments and Informations* § 300, at 1330). Therefore, we reject the State's contention that the variance between the indictment and defendant's conviction is harmless, and we vacate defendant's first-degree arson conviction.

While the indictment here is not sufficient to support a conviction for first-degree arson, it does allege all of the elements of second-degree arson: (1) the willful and malicious burning (2) of the dwelling (i.e., inhabited) house of another (3) which is unoccupied at the time of the burning. In addition, the evidence in the record is sufficient to support all of the elements of second-degree arson. Therefore, upon remand the trial court is instructed to enter judgment against defendant for second-degree arson and to sentence defendant accordingly.

**[4]** Defendant next contends that the trial court erred in entering judgment against him for first-degree burglary because the jury was instructed on a theory not alleged in the burglary indictment. In addition, since first-degree burglary was the underlying felony for both of defendant's felony murder convictions, defendant contends that the variance between the indictment and the jury instructions on burglary also tainted his first-degree murder convictions. Thus, defendant contends that not only is he entitled to a new trial on the burglary indictment, but he is also entitled to a new trial on the two murder indictments. Based on the following analysis, we disagree.

A murder is a felony murder when it is "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." N.C. Gen. Stat. § 14-17 (1999); *State v. Barlowe*, 337 N.C. 371, 380, 446 S.E.2d 352, 358 (1994). When the State prosecutes a defendant for first-degree murder under the felony murder rule, the State is not required to secure a separate indictment for the underlying felony. *State v. Williams*, 305 N.C. 656, 660 n. 1, 292 S.E.2d 243, 247 (1982); *State v. Carey*, 288 N.C. 254, 274, 218 S.E.2d 387, 400 (1975). If the State does secure a separate indictment for the underlying felony, and there is a conviction of both felony murder and the underlying felony, the defendant will be sentenced for the murder and the judgment must be arrested

for the underlying felony under the merger rule. *Barlowe*, 337 N.C. at 380, 446 S.E.2d at 358; *Carey*, 288 N.C. at 274, 218 S.E.2d at 400. If the indictment for the underlying felony is treated as surplusage, and only the felony murder charge submitted to the jury, the defendant cannot thereafter be charged for the underlying felony. *Carey*, 288 N.C. at 274-75, 218 S.E.2d at 400.

In the instant case, defendant was charged with first-degree burglary in an indictment that specified that defendant broke into the home of Docia and Melinda Chavis with the intent to commit murder.[2] Defendant was also charged with two counts of murder in short-form indictments authorized by N.C. Gen. Stat. § 15-144. "The short-form indictment has been held sufficient to charge murder in the first degree on the basis of either felony murder or premeditation and deliberation." *State v. Brown*, 320 N.C. 179, 191, 358 S.E.2d 1, 11 (1987).

Following the presentation of evidence, the jury was instructed that it could find defendant guilty of first-degree burglary if the State proved beyond a reasonable doubt that he broke into the house in question with the intent to commit murder *or* rape. In addition, the jury was instructed on first-degree murder on the theory of premeditation and deliberation and felony murder. The trial court defined felony murder as the killing of a human being in the perpetration of a burglary, and instructed the jury that it could find defendant guilty of first-degree felony murder if the State proved beyond a reasonable doubt that defendant broke into the house with the intent to commit murder *or* rape, and during the commission of the burglary, defendant killed the victims. In its verdict, the jury specifically found defendant not guilty of first-degree murder on the basis of malice, premeditation, and deliberation but guilty of first-degree murder under the felony murder rule. The jury also found defendant guilty of first-degree burglary. However, since the underlying felony for the felony murder convictions was burglary, the trial court properly arrested judgment on the first-degree burglary conviction.

Defendant maintains that the trial court improperly instructed the jury on first-degree burglary by allowing defendant to be convicted if the evidence proved that he intended to commit murder *or* rape when he broke into the home, while the indictment only alleged

2. The essential elements of first-degree burglary are: (1) breaking or entering, (2) the occupied dwelling house of another, (3) in the nighttime, (4) with the intent to commit a felony therein. N.C. Gen. Stat. § 14-51 (1999); *State v. Montgomery*, 341 N.C. 553, 566, 461 S.E.2d 732, 739 (1995).

the intent to commit murder. Since burglary was the underlying felony for the felony murder convictions, defendant further argues that the variance between the first-degree burglary indictment and the instructions to the jury on burglary tainted the felony-murder convictions. We disagree.

Any alleged error arising from the variance between the burglary indictment and the trial court's instructions on burglary has no effect on defendant's felony murder convictions because the State is not required to secure a separate indictment for the underlying felony in a felony murder prosecution. *Carey*, 288 N.C. at 274, 218 S.E.2d at 400. Further, the trial court arrested judgment on defendant's first-degree burglary charge. Thus, any error in the charge of burglary was harmless.

Nonetheless, the State was not precluded from using burglary as the underlying felony in the prosecution of defendant for first-degree felony murder. *Id.* at 275, 218 S.E.2d at 400. In order to do so, the State was required to present substantial evidence that defendant murdered the victims during the perpetration of a breaking or entering which defendant committed with the intent to commit murder or rape. On appeal, defendant has not argued that the evidence was insufficient to support felony murder based on burglary as it was presented to the jury. Therefore, we need not address such argument.

In sum, the State was not required to return an indictment for burglary in order to use burglary as the underlying felony in the prosecution of defendant for felony murder. Therefore, any variance between the burglary indictment and the charge to the jury on burglary did not prevent the State from using burglary as the underlying felony for felony murder. Defendant's assignment of error is overruled.

For preservation purposes, defendant next argues that the short-form indictments for murder and rape authorized by N.C. Gen. Stat. §§ 15-144 and 15-144.1 and utilized in this case are unconstitutional. However, defendant concedes that our Supreme Court has consistently held that the short-form indictments for murder and rape comport with both the North Carolina Constitution and the United States Constitution. *See State v. Wallace*, 351 N.C. 481, 504-05, 528 S.E.2d 326, 341, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000); *State v. Kilpatrick*, 343 N.C. 466, 472, 471 S.E.2d 624, 628 (1996). Defendant has neither advanced new arguments nor cited any new authority to

persuade this Court to depart from these holdings. Therefore, this assignment of error is overruled.

Defendant's remaining assignments of error are deemed abandoned pursuant to Rule 28(a) of the Rules of Appellate Procedure for defendant's failure to present argument in support thereof in his brief.

## Conclusion

In conclusion, we hold that judgment against defendant for first-degree arson is hereby vacated and the case remanded with instructions that judgment be entered against defendant for second-degree arson and that defendant be sentenced accordingly. Defendant's remaining convictions stand undisturbed.

In 95 CRS 12779, judgment vacated and case remanded for entry of judgment for second-degree arson and appropriate sentencing.

In 95 CRS 12780-12782, no error.

In 95 CRS 12818, no error.

Judges GREENE and McCULLOUGH concur.