INMAN, Judge.
 

 *733
 
 Curtis Ray Gates, Jr. ("Defendant") appeals his convictions for second-degree sex offense and breaking or entering. We vacate and remand for entry of judgment convicting him of attempted sexual offense and breaking or entering because the indictment charging Defendant alleged only an attempted and not a completed sex offense. We also overrule Defendant's claim that he received ineffective assistance of counsel.
 

 I.
 
 Background
 

 The State's evidence at trial was as follows:
 

 Around 7:30 a.m. on 10 May 2013, KL
 
 [1]
 
 was sexually assaulted by a man in her home. She had first met her attacker about two months earlier, when he knocked on the door of her residence and asked if a "Corporal So-and-so" lived there. KL told the man "no," and he left. KL did not see the man again until the attack on 10 May 2013.
 

 The morning she was attacked, KL's husband had left their home for work before 5:00 a.m. and did not lock the exterior doors. KL had not heard her husband leave, and thought it was her husband's footsteps she heard when her attacker entered the house. When she awoke more fully, she saw a man standing in the doorway of her bedroom wearing a green T-shirt, dark pants, and gray shoes. The man asked KL where her husband was and she responded "at work." KL then asked the man, "why are you here?" The man responded that he wanted to have sex with her. When she tried to get up from her bed, the man pushed her back down. He told her to be quiet and that he did not want to hurt her.
 

 KL testified that she was afraid for herself and for her children, who were elsewhere in the house, so she did not attempt to resist. KL told the man she was sick, attempting to dissuade him, but the man did not stop. He removed her bra and put on a condom. He tried to penetrate her vaginally but was not successful. He then removed the condom and began to put a blanket over KL's face but stopped when she begged him not to. He forced KL to perform fellatio on him. After about two minutes, the man ejaculated and demanded that KL rinse out her mouth. KL spit some of the semen out, but tried to retain some behind in the back of her throat. The man then told KL he was sorry, asked for a hug, hugged KL, and walked out the back door of the home.
 

 KL then called her husband, told him what had happened, and locked all the doors. She swabbed the inside of her mouth with a Q-tip and cotton balls and placed those items in a Ziploc bag. Officer Bryan Stitz
 
 *734
 
 ("Officer Stitz") of the Jacksonville Police Department arrived about five or ten minutes later. KL told Officer Stitz what had happened. A second police officer swabbed KL's mouth to collect evidence.
 

 Officer William Woolfolk ("Officer Woolfolk") of the Jacksonville Police Department testified that he arrived at the victim's residence around 8:44 a.m. on 10 May 2013. He spoke with Officer Stitz and a detective on the scene who advised him that a sexual assault had occurred and there was "some biological evidence in a sandwich bag inside the foyer." While wearing latex gloves, Officer Woolfolk collected a sandwich bag containing two cotton balls and one Q-tip. He then placed the evidence in his car. He changed gloves and collected more Q-tip samples from the sink. Once he had gathered the evidence, he transported the samples to the police department. The samples were later sent to the United States Army Criminal Investigation Laboratory ("USACIL") for analysis. A forensic biologist employed by USACIL, found three separate DNA profiles in the samples: KL, her husband, and Defendant.
 

 *883
 
 KL saw the man who attacked her two weeks later when she was walking home from a shopping trip to Walmart around 9:00 p.m. He was wearing a khaki-green trainer shirt, dark colored knee-length pants, and black shoes with red lines. The man asked her if she remembered him, and KL answered "yes." He asked KL if she had told her husband about the incident and asked about meeting again. KL walked home immediately and told her husband. Her husband quickly got dressed and chased after the man, but was unable to find him.
 

 On 3 June 2013, KL met with a special agent trained as a sketch artist at the police department. KL provided a rough sketch of her attacker she had drawn herself. After the sketch artist met and spoke with her at length about the incident, he drew a composite of KL's attacker.
 

 The warrant for Defendant's arrest alleged that he "unlawfully, willfully, and feloniously did engage in a sex offense with [KL] by force and against that victim's will." It also alleged that he committed a crime against nature with KL and alleged that Defendant entered KL's residence with the intent to commit a felony.
 

 Defendant was charged in a three-count bill of indictment. The second and third counts were for "Crime Against Nature" and "Breaking and Entering," respectively, stating charges consistent with the arrest warrant. But count one in the indictment, labeled "Second Degree Sexual Offense," did not match the arrest warrant. It stated that Defendant "willfully and feloniously did
 
 attempt
 
 to engage in a sex offense with [KL] by force and against that victim's will." (Emphasis added.)
 

 *735
 
 The word "attempt" in the indictment apparently escaped the notice of the trial court, who instructed jurors that "[t]he defendant has been charged with second-degree sexual offense." The trial judge provided no instruction regarding attempt. The jury returned a guilty verdict for Defendant for second-degree sex offense and felonious breaking or entering.
 
 [2]
 
 The trial court consolidated the offenses into one judgment. Defendant was sentenced in the presumptive range to 96 to 176 months in prison. Defendant gave oral notice of appeal.
 

 II.
 
 Analysis
 

 A. Validity of the Indictment
 

 Defendant first argues that the trial court erred in accepting the jury's verdict of guilty of second-degree sex offense, when count one of the indictment charged
 
 attempted
 
 second-degree sex offense. We agree.
 

 "[W]here an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court."
 
 State v. Wallace,
 

 351 N.C. 481
 
 , 503,
 
 528 S.E.2d 326
 
 , 341,
 
 cert. denied,
 

 531 U.S. 1018
 
 ,
 
 121 S.Ct. 581
 
 ,
 
 148 L.Ed.2d 498
 
 (2000). "This Court reviews the sufficiency of an indictment
 
 de novo.
 
 An indictment must set forth each of the essential elements of the offense.... To require dismissal any variance must be material and substantial and involve an essential element."
 
 State v. Hooks,
 
 --- N.C.App. ----, ----,
 
 777 S.E.2d 133
 
 , 138 (2015) (internal quotation marks and citation omitted).
 

 North Carolina permits "short-form" indictments in murder, sex offense, and rape cases.
 
 Wallace,
 

 351 N.C. at 508
 
 ,
 
 528 S.E.2d at 343
 
 . N.C. Gen.Stat. § 15-144.2(a) (2015) provides, in pertinent part:
 

 In indictments for sex offense it is not necessary to allege every matter required to be proved on the trial; but in the body of the indictment, after naming the person accused, the date of the offense, the county in which the sex offense was allegedly committed, and the averment "with force and arms," as is now usual, it is sufficient in describing a sex offense to allege that the accused person unlawfully, willfully, and feloniously did engage in a sex offense with the victim, naming the victim, by force and against the will of such victim and concluding as is now required by law.
 

 *884
 

 *736
 
 "[T]he trial court lacks subject matter jurisdiction to try, or enter judgment on, an offense based on an indictment that only charges a lesser-included offense."
 
 State v. Scott,
 

 150 N.C.App. 442
 
 , 453-54,
 
 564 S.E.2d 285
 
 , 294 (2002). "While it is permissible to convict a defendant of a lesser degree of the crime charged in the indictment, ... an indictment will not support a conviction for an offense more serious than that charged."
 
 Id.
 
 at 454,
 
 564 S.E.2d at 294
 
 .
 

 In this case, count one of the indictment does not set forth each element of second-degree sex offense, as required to confer jurisdiction upon the trial court to convict for that offense.
 
 See
 

 Hooks,
 
 --- N.C.App. at ----,
 
 777 S.E.2d at 138
 
 . Because an attempted sex offense, as described in this indictment, is not a completed sex offense, the statutory essential element that Defendant "engage in a sexual act" is absent.
 

 The State argues that the indictment is valid because the word "attempt" is simply "used in its common meaning, to describe the defendant's unsuccessful attempt to engage in vaginal intercourse with the victim." This argument is without merit because the North Carolina statute provides a definition of "sexual act" which does not include vaginal intercourse. N.C. Gen.Stat. § 14-27.20(4) ; 14-27.5 (2013). Further, "[w]ords [ (in a statutorily prescribed form of criminal pleading) ] having technical meanings must be construed according to such meanings."
 
 State v. Coker,
 

 312 N.C. 432
 
 , 434,
 
 323 S.E.2d 343
 
 , 346 (1984). The word "attempt" in the indictment must be construed according to its technical meaning-an attempted second-degree sex offense.
 

 The State further argues that count one and count two (crime against nature), when considered together, satisfy all the elements of a valid short-form indictment for completed second-degree sexual offense. This argument is without merit. Although count one contains the phrase "by force and against the victim's will," count two does not. The indictment does not allege that the crime against nature was by force and against the victim's will. Even if we assume the words "crime against nature" in count two of the indictment refer to a sexual act, the indictment does not show that the crime against nature it alleges is the sexual act referenced in count one. Without the specific allegation that the crime against nature was committed by force and against the person's will, the indictment is devoid of an essential element of second-degree sex offense. Also, because the State dismissed the crime against nature charge, the jury had no opportunity to determine Defendant's guilt to that count of the indictment.
 

 The facts of this case are similar to those in
 
 *737
 

 State v. Pettis,
 
 COA11-1438,
 
 2012 WL 2308458
 
 , at *2, 2012 N.C.App. LEXIS 734, *1,
 
 221 N.C.App. 435
 
 ,
 
 727 S.E.2d 25
 
 (2012) (unpublished). In
 
 Pettis,
 
 both the heading and the body of the indictment at issue contained language pertaining to attempted sex offense by a person assuming a parental role. During trial, the prosecutor misspoke and stated that the body of the indictment did not contain the word "attempt" and that the State was proceeding on the principle charge.
 
 Id.
 
 at *2, 2012 N.C.App. LEXIS 734, at *3-5. The trial court, relying on the prosecutor's misstatement, instructed the jury on completed sexual offense by a person assuming a parental role.
 
 Id.
 
 at *4, 2012 N.C.App. LEXIS 734, at *5-6. Because the trial court did not have " 'subject matter jurisdiction to try, or enter judgment on, an offense based on an indictment that only charges a lesser-included offense[,]' " this Court vacated the defendant's conviction.
 
 Id.
 
 at *3, 2012 N.C.App. LEXIS 734, at *7 (quoting
 
 Scott,
 

 150 N.C.App. at 453-54
 
 ,
 
 564 S.E.2d at
 
 294 ).
 

 The indictment charging Defendant with second-degree sexual offense failed to allege that Defendant actually committed a sex offense, so it was ineffective to confer jurisdiction upon the trial court to convict Defendant of second-degree sexual offense. However, the indictment sufficiently alleged attempted second-degree sexual offense and the jury's verdict supports a conviction for that offense.
 
 See
 
 N.C. Gen.Stat. § 15-144.2 (2015) ("Any bill of indictment containing [the short-form] averments and allegations ... will support a verdict of guilty of ... an attempt to commit a sex offense or an assault."); N.C. Gen.Stat. § 15-170 (2015) ("Upon the trial of any indictment
 
 *885
 
 the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime.");
 
 State v. Stokes,
 

 367 N.C. 474
 
 , 482,
 
 756 S.E.2d 32
 
 , 38 (2014) ("By finding defendant guilty of second-degree kidnapping, the jury necessarily found beyond a reasonable doubt all the elements of the lesser included offense of attempted second-degree kidnapping."). We vacate the judgment and remand this case to the trial court for entry of judgment of conviction for attempted second-degree sexual offense and breaking or entering and for resentencing.
 
 See
 

 Lineberger v. N.C. Dep't of Corr.,
 

 189 N.C.App. 1
 
 , 18,
 
 657 S.E.2d 673
 
 , 684 (2008) ("Under a consolidated sentence, if one of the counts upon which the conviction is based is set aside, the entire judgment must be remanded for resentencing even if the remaining counts would have been sufficient, standing alone, to justify the consolidated sentence.").
 

 The trial court must determine Defendant's sentences for attempted second-degree sexual offense and breaking or entering.
 
 State v. Wortham,
 

 318 N.C. 669
 
 , 674,
 
 351 S.E.2d 294
 
 , 297 (1987) ("[W]e think the better procedure is to remand for resentencing when one or more but not all of the convictions consolidated for judgment has been vacated.");
 
 see
 

 *738
 

 Scott,
 

 150 N.C.App. at 453-54
 
 ,
 
 564 S.E.2d at 294
 
 (vacating the defendant's conviction for first-degree arson and remanding to the trial court for entry of judgment and resentencing for second-degree arson because the indictment failed to allege all the essential elements of first-degree arson).
 

 On remand, the trial court is not bound by its earlier decision to consolidate Defendant's convictions for sentencing. N.C. Gen.Stat. § 15A-1335 (2015) provides, in pertinent part:
 

 When a conviction or sentence imposed in superior court has been set aside on direct review or collateral attack, the court may not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence less the portion of the prior sentence previously served.
 

 N.C. Gen.Stat. § 15A-1335 "does not prohibit the trial court's replacement of concurrent sentences with consecutive sentences upon resentencing, provided neither the individual sentences, nor the aggregate sentence, exceeds that imposed at the original sentencing hearing."
 
 State v. Oliver,
 

 155 N.C.App. 209
 
 , 211,
 
 573 S.E.2d 257
 
 , 258 (2002).
 

 B. Ineffective Assistance of Counsel
 

 Defendant next argues that he received ineffective assistance of counsel because his counsel at trial failed to object to evidence of Defendant's involvement in another sexual assault of a different female victim. After careful review of the record, we disagree.
 

 1. Standard of Review
 

 "In order to obtain relief on the basis of an ineffective assistance of counsel claim, Defendant is required to demonstrate that his trial counsel's performance was deficient and that this deficient performance prejudiced the defense."
 
 State v. Pemberton,
 

 228 N.C.App. 234
 
 , 240,
 
 743 S.E.2d 719
 
 , 724 (2013) (internal citations omitted). The United States Supreme Court has provided a two-part test to use in deciding whether a defendant has a valid claim for ineffective assistance of counsel:
 

 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as
 
 *739
 
 to deprive the defendant of a fair trial, a trial whose result is reliable.
 

 Strickland v. Washington,
 

 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 , 693 (1984). The North Carolina Supreme Court adopted this test in
 
 State v. Braswell,
 

 312 N.C. 553
 
 , 562,
 
 324 S.E.2d 241
 
 , 248 (1985). To establish that counsel was ineffective, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."
 
 Strickland,
 

 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 .
 

 *886
 
 "[E]ven if counsel made an unreasonable error, [a defendant must show that] there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings."
 
 State v. Banks,
 

 210 N.C.App. 30
 
 , 49,
 
 706 S.E.2d 807
 
 , 821 (2011) (internal quotation marks omitted).
 

 "In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal."
 
 State v. Stroud,
 

 147 N.C.App. 549
 
 , 553,
 
 557 S.E.2d 544
 
 , 547 (2001). However, when the appellate court can adequately review the merits of an ineffective assistance of counsel claim based on the appellate record, we will do so in the interest of judicial economy.
 

 It is well established that ineffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.
 

 State v. Thompson,
 

 359 N.C. 77
 
 , 122-23,
 
 604 S.E.2d 850
 
 , 881 (2004) (internal quotation marks and citation omitted).
 

 Defendant's ineffective assistance of counsel claim is based upon evidence introduced at trial and does not rely upon information outside the record. Accordingly, we address it.
 

 2. Evidence of Another Crime
 

 During a criminal trial, evidence of other crimes committed by the defendant-crimes for which he is not on trial-is not admissible to prove the defendant's propensity to commit the crime charged. N.C. Gen.Stat. § 8C-1, N.C. R. Evid. 404(b) (2015). But evidence of other crimes is admissible for other purposes, including to identify the defendant as the perpetrator of the crime for which he is on trial.
 

 Id.
 

 In this case, the State introduced evidence of Defendant's involvement in another sexual assault because a sample of Defendant's DNA collected in the
 
 *740
 
 investigation of that assault matched DNA found at the scene of the assault on KL.
 

 Defendant argues his counsel should have objected to testimony by two Jacksonville Police Department officers who investigated a sexual assault on 14 July 2013 ("the July assault"), two months after the assault on KL.
 

 In a
 
 voir dire
 
 hearing outside the jury's presence, the State offered transcribed testimony by Officer Chris Funcke ("Officer Funcke") given in Defendant's trial following the July assault.
 
 [3]
 
 The State argued that the evidence was probative to show Defendant's identity as KL's attacker and to tell jurors the complete story of how law enforcement officers had matched Defendant's DNA with DNA found at the crime scene in the present case. The prosecutor explained that Defendant was not a suspect in the present case until officers investigated him in the July assault case. The prosecutor noted similarities between the two incidents in that each: (1) involved an alleged assault on a stranger, (2) involved the demand of oral sex in a "forced situation," (3) happened in the early morning hours, and (4) occurred within three miles of one another. Defense counsel objected to testimony relaying a hearsay statement by the victim in the July assault and asked the trial court to tell the jury that evidence about the July assault "is being offered for these particular purposes and these purposes only." Defense counsel acknowledged that the State was offering the evidence "to link up how they ended up with Mr. Gates and his DNA and brought it into here." The trial court allowed the testimony, including the July assault victim's hearsay statement, for the purposes of proving Defendant's identity as KL's attacker, "enhanc[ing] the natural development of the facts," and "describ[ing] a chain of circumstances which the [S]tate needs to show, in order to introduce testimony as to a subsequent search warrant of [D]efendant's home, as well as the acquisition of the DNA sample." Following the
 
 voir dire
 
 hearing, and
 
 *887
 
 prior to Officer Funcke's testimony, the trial court gave the jury a limiting instruction:
 

 Ladies and gentlemen, this testimony is not being admitted to show or prove the character of the defendant, or
 
 *741
 
 any propensity of the defendant to commit any offense. Mr. Funcke's testimony is being received solely for the purpose of showing the identity of the person who committed the alleged offense on May 10, 2013. It is also being admitted to explain the development of the facts of the case and the chain of circumstances that led to further law enforcement actions, which will be described by additional witnesses offered by the state. If you believe this testimony or evidence, you may consider it, but only for the limited purposes for which it was received.
 

 The trial court reiterated this limiting instruction during the jury instructions at the end of the trial.
 

 Officer Funcke testified at trial for the present case as follows:
 

 While patrolling the parking lot of Hooligans nightclub in the early morning of 14 July 2013, Officer Funcke noticed a car parked behind an adjacent building. When he pulled his vehicle next to the parked car, he saw Defendant, whom he identified in court, lying on the ground and a woman performing fellatio on him. When the woman saw Officer Funcke, she stood up and ran toward him, "crying hysterically," thanking him and saying "he [ (Defendant) ] was going to rape me." She told Officer Funcke that she had been trying to get into her car when Defendant punched her and forced her to the location where Officer Funcke had found them. Officer Funcke then examined Defendant's car at the scene and saw a green, military-style shirt, like that identified by KL in the present case. Another officer who arrived on the scene mentioned the sketch of KL's attacker and Officer Funcke recognized that Defendant resembled that sketch.
 

 The trial court also allowed testimony by Detective Karen Scott ("Detective Scott") as follows: Detective Scott was the lead investigator of the July assault and was also assigned to KL's case, which remained open as officers had not identified a suspect. While searching Defendant's house in connection with the July assault, Detective Scott found shoes consistent with those KL had described were worn by her attacker. Detective Scott collected a sample of Defendant's DNA and discovered that it matched the DNA on the swab samples taken from KL's residence.
 

 The trial court did not give jurors a limiting instruction regarding Detective Scott's testimony. Defense counsel did not object before the jury to testimony by either Officer Funcke or Detective Scott.
 

 *742
 
 N.C. Gen.Stat. § 8C-1, N.C. R. Evid. 404(b) provides:
 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
 

 Rule 404(b) is "a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged."
 
 State v. Coffey,
 

 326 N.C. 268
 
 , 278-79,
 
 389 S.E.2d 48
 
 , 54 (1990) (emphasis removed).
 

 [A]dmission of evidence of a criminal defendant's prior bad acts, received to establish the circumstances of the crime on trial by describing its immediate context, has been approved in many other jurisdictions following adoption of the Rules of Evidence. This exception is known variously as the "same transaction" rule, the "complete story" exception, and the "course of conduct" exception. Such evidence is admissible if it forms part of the history of the event or serves to enhance the natural development of the facts.
 

 State v. Agee,
 

 326 N.C. 542
 
 , 547,
 
 391 S.E.2d 171
 
 , 174 (1990) (internal quotation marks and citations omitted). "Our Supreme Court has ruled that the list of exceptions contained in Rule 404(b) is not exclusive and that extrinsic evidence of conduct is admissible if relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried."
 
 State v.
 

 *888
 

 Pruitt,
 

 94 N.C.App. 261
 
 , 266,
 
 380 S.E.2d 383
 
 , 385 (1989) (internal quotation marks omitted). "Moreover, in cases involving prior sex offenses, including rape, our courts have been markedly liberal in the admission of 404(b) evidence."
 
 State v. Harris,
 

 140 N.C.App. 208
 
 , 211,
 
 535 S.E.2d 614
 
 , 617 (2000). "The burden is on the defendant to show that there was no proper purpose for which the evidence could be admitted."
 
 State v. Moseley,
 

 338 N.C. 1
 
 , 32,
 
 449 S.E.2d 412
 
 , 431 (1994).
 

 Our review of the record, summarized above, reveals that Defendant could not have met his burden to show there was no proper purpose for the testimony by Officer Funcke and Detective Scott. It was relevant to prove Defendant's identity as KL's attacker, as the trial court stated. The
 
 *743
 
 testimony explained why law enforcement officers identified Defendant as a suspect in the assault on KL and how they obtained his DNA, which matched DNA samples collected following KL's assault. It "serve[d] to enhance the natural development of the facts."
 
 Agee,
 
 326 N.C. at 547,
 
 391 S.E.2d at 174
 
 . Because of these legitimate purposes, the testimony was admissible. Defense counsel's failure to object to the introduction of the evidence was not deficient. Defendant's ineffective assistance of counsel claim is therefore overruled.
 
 [4]
 

 III.
 
 Conclusion
 

 For the foregoing reasons, we vacate the conviction for second-degree sexual offense and remand for entry of judgment and resentencing for attempted second-degree sexual offense and breaking or entering. We overrule Defendant's claim for ineffective assistance of counsel.
 

 VACATED AND REMANDED.
 

 Judges STEPHENS and HUNTER, JR. concur.
 

 [1]
 

 We use initials for the victim KL to protect her privacy.
 

 [2]
 

 Before the case was submitted to the jury, the State dismissed the charge of crime against nature.
 

 [3]
 

 Defendant was convicted on charges of first-degree sexual offense, first-degree kidnapping, and crime against nature in the other case, which this Court reviewed and held was free from error.
 
 State v. Gates,
 
 ---N.C.App. ----, ----,
 
 781 S.E.2d 883
 
 , 886 (2016). Jurors in the present case were not told about Defendant's conviction in that case.
 

 [4]
 

 We also deny Defendant's Motion Requesting This Court to Take Judicial Notice That the Sun Rose at 6:10 A.M. on Friday, May 10, 2013, at Jacksonville, Onslow County, North Carolina Based on the Records of the U.S. Naval Observatory. Knowledge of the time the sun rose on that particular day may pertain to whether the evidence of the other crime showed Defendant had a common plan or scheme, but it is not necessary with regard to identity or showing the complete story.